407 Mass. 601 (1990)
555 N.E.2d 543
CHRISTINE A. GRAHAM
vs.
QUINCY FOOD SERVICE EMPLOYEES ASSOCIATION AND HOSPITAL, LIBRARY AND PUBLIC EMPLOYEES UNION.
Supreme Judicial Court of Massachusetts, Norfolk.
March 6, 1990.
June 12, 1990.
Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.
Kathryn M. Noonan (Lisa J. Brandzel with her) for the plaintiff.
Robert M. Schwartz for the defendant.
ABRAMS, J.
The plaintiff, Christine Graham, appeals from a final judgment entered for the defendant, the Quincy Food Service Employees Association and Hospital, Library and Public Employees Union (union) after the denial of her motion for summary judgment and the grant of summary judgment for the union. See Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). The plaintiff argues that the judge erred in not granting summary judgment for her. Alternately, she contends that the case should be remanded for trial. We transferred the case to this court on our own motion. We reverse the judgment below and remand the case to the Superior Court for trial.
The plaintiff, an employee in the Quincy public school system, filed this suit in February, 1986, against the city, the school committee, various school officials, and the union.[1] The plaintiff alleged that she had been demoted improperly from her position as a cook. The count against the union was for breach of the duty of fair representation, based on allegations *603 that the union failed to assist her, beginning in April, 1985, in her efforts to seek reinstatement.
I. Summary judgment. "Rule 56 (c) of the Massachusetts Rules of Civil Procedure, 365 Mass. 824 (1974), provides that a judge shall grant a motion for summary judgment `if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' `The party moving for summary judgment assumes the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue, even if he would have no burden on an issue if the case were to go to trial.' Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). See Layne v. Superintendent, Massachusetts Correctional Institution, Cedar Junction, [406 Mass.] 156, 161 & n. 6 (1989). See also Attorney Gen. v. Bailey, 386 Mass. 367, 371, cert. denied sub nom. Bailey v. Bellotti, 459 U.S. 970 (1982)." Doherty v. Hellman, 406 Mass. 330, 333 (1989).
Generally, in reviewing a grant of summary judgment, we view the facts in the light most favorable to the party opposing summary judgment. Alioto v. Marnell, 402 Mass. 36, 37 (1988). Thus, we assume that "all of the facts set forth in the [opposing party's] affidavits [are] true...." Coveney v. President & Trustees of the College of the Holy Cross, 388 Mass. 16, 17 (1983). When the court below grants summary judgment for the nonmoving party, we invert the usual standard and "view the record in the light most flattering to ... the summary judgment loser," here, the plaintiff. Quaker State Oil Refining Corp. v. Garrity Oil Co., 884 F.2d 1510, 1513 (1st Cir.1989).
The plaintiff began working in the food services department of the Quincy public schools on October 15, 1973. She was promoted to the position of cook in 1978. In 1982, because of financial constraints, the Quincy school committee decided to demote four cooks to the position of cafeteria helper. The cooks were to be demoted in reverse order of their civil service seniority, in accordance with the provisions *604 of G.L.c. 31, § 39. The plaintiff was chosen for demotion on the basis of civil service records that listed an erroneous date adversely affecting her seniority. Despite the plaintiff's efforts to bring the error to the attention of the school committee, it voted to proceed on the basis of the official dates in the civil service records, although it promised to reinstate the plaintiff if it were later determined that she had been wrongly demoted due to an incorrect seniority date. Subsequently, the union filed an appeal to the Civil Service Commission to correct the seniority dates of the plaintiff and several other employees whose records listed incorrect seniority dates.
While awaiting action from the Civil Service Commission, the plaintiff worked as a cafeteria helper for the 1982-1983 school year. In early 1984, union officials effected what was, in essence, a merger with another union. The plaintiff vigorously opposed the merger and testified at a Labor Relations Commission hearing concerning her opposition. The plaintiff contends that "[t]he events surrounding the merger gave rise to hostility and discrimination by the union towards the plaintiff." After the merger was effected, the plaintiff continued to speak out against the arrangement and questioned union officers about the possibility that union funds had been improperly used. In response, the union president, Ruth DeCristofaro, removed the plaintiff from the union's grievance committee, on which she had served for about two years.
The plaintiff continued to pursue the matter of the incorrect seniority date. In February, 1985, the school committee offered to settle the matter of the incorrect seniority date in a manner unsatisfactory to the plaintiff. She refused the school committee's offer. On February 28, 1985, the Civil Service Commission held a hearing regarding seniority dates. Shortly thereafter, the Civil Service Commission decided that the plaintiff's seniority date as listed was incorrect and that it *605 should be adjusted.[2] In April, 1985, the plaintiff asked the union to assist her in seeking reinstatement to the position of cook, in light of the favorable result she had received from the Civil Service Commission. DeCristofaro, one of the plaintiff's principal opponents in matters of union politics, informed the plaintiff that the union would not represent her regarding the seniority matter, "because [the plaintiff] could not win." When the plaintiff asked for a written memorandum to that effect, DeCristofaro responded, "Don't hold your breath." In June, the plaintiff again asked the union to assist her. The union's executive board refused.
Despite the union's refusal to assist her, the plaintiff pursued the matter with the school committee. In July, 1985, the school committee voted to reinstate the plaintiff and grant her back pay. In August, however, the plaintiff received a check from the school committee in an amount substantially less than she thought was due. She initially refused the check and then accepted it in partial payment. Despite the school committee's vote in her favor, when she reported to work in September, 1985, she was assigned to work fewer hours per week than other cooks and was assigned the tasks of a cafeteria helper, not a cook.
The plaintiff wrote a letter to the union's executive director, John Keefe, asking for the union's help in "resolv[ing] *606 these conditions." There was no reply. No grievance was filed on the plaintiff's behalf. In December, 1985, the plaintiff again resorted to self-help and appealed to the school committee. The school committee voted not to award any further back pay and did not address the plaintiff's complaint that she was not being permitted to work as a cook. Because she was unsuccessful in her efforts to gain work as a cook, rather than as a cafeteria helper, she again requested that the union file a grievance on her behalf in September, 1986. The plaintiff received no helpful response from the union. The plaintiff stated that, during the time she served on the union's grievance committee, the committee never refused to assist a union member in pursuing a grievance.
Breach of the duty of fair representation occurs if a union's actions toward an employee are "arbitrary, discriminatory, or in bad faith." Vaca v. Sipes, 386 U.S. 171, 190 (1967). "[A] union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion...." Id. at 191. Unions are permitted "a wide range of reasonableness" in representing the often-conflicting interests of employees; hence, unions are vested with considerable discretion not to pursue a grievance, as long as their actions are "not improperly motivated, arbitrary, perfunctory or demonstrative of inexcusable neglect." Baker v. Local 2977, State Council 93, Am. Fed'n of State, County, & Mun. Employees, 25 Mass. App. Ct. 439, 441 (1988), quoting Local 285, Serv. Employees Int'l Union, 9 M.L.C. 1760, 1764 (1983). Therefore, "[a]lthough ordinary negligence may not amount to a denial of fair representation, lack of a rational basis for a union decision and egregious unfairness or reckless omissions or disregard for an individual employee's rights may have that effect." Trinque v. Mount Wachusett Community College Faculty Ass'n, 14 Mass. App. Ct. 191, 199 (1982).
Under this standard, the grant of summary judgment to the union was improper. The facts, when taken in the light most favorable to the plaintiff, do not warrant a conclusion that, as a matter of law, the union did not violate its duty of fair representation. The union's argument that summary *607 judgment was proper rests on two contentions: (1) that the plaintiff's grievances[3] were unmeritorious; and (2) that their meritlessness was the reason for its refusal to assist the plaintiff before the school committee.
1. The facts presented in the motion for summary judgment do not establish that the plaintiff's grievances were unmeritorious as a matter of law. Indeed, the union's argument that they were flies in the face of the plaintiff's limited but genuine successes before the Civil Service Commission and the school committee. In order to survive summary judgment, the plaintiff need not show with complete certainty that her grievances were meritorious, so that if the union had not failed to represent her, she would have been entirely successful in obtaining the full relief sought. Rather, she need show on this point only that her grievances were arguably meritorious. See, e.g., Zimmerman v. Foundation of the French Int'l School Rochambeau of Washington, 830 F.2d 1316 (4th Cir.1987) (union not entitled to summary judgment in fair representation action when it refused to press arguably meritorious grievance); San Francisco Web Pressmen & Platemakers' Union v. NLRB, 794 F.2d 420 (9th Cir.1986) (union liable for breach of the duty of fair representation if it fails to process nonfrivolous grievance fairly). Accord Harrison v. United Transp. Union, 530 F.2d 558 (4th Cir.1975), cert. denied, 425 U.S. 958 (1976). Cf. Abilene Sheet Metal, Inc. v. NLRB, 619 F.2d 332 (5th Cir.1980).
The union's principal legal argument in support of its contention that the plaintiff's grievances were unmeritorious is that they were untimely, i.e., that the plaintiff did not bring them to the attention of the union in time for the union to file them within the brief period permitted by the collective bargaining agreement. The plaintiff presents several arguments to counter this contention. First, she points out that the untimeliness of a grievance is a defense generally raised *608 by employers, not unions, and that it was not the employer's practice to insist on the time limits outlined in the collective bargaining agreement. Indeed, the school committee's willingness to hear the plaintiff's complaint supports the plaintiff's argument on this point. Second, the plaintiff argues that her grievances, or complaints, were of continuing violations, and thus, that their timeliness would not affect their meritoriousness. "The miscalculation of [the plaintiff's] seniority and the resulting underpayment was an ongoing harm, not an isolated incident" (emphasis added). Leahy v. Local 1526, Am. Fed'n of State, County, & Mun. Employees, 399 Mass. 341, 354 (1987). Cf. Lynn Teachers Union, Local 1037 v. Massachusetts Comm'n Against Discrimination, 406 Mass. 515 (1990). Third, the plaintiff argues that what she asked from the union was not that it file a grievance, but that it assist her in presenting her favorable result from the Civil Service Commission to the school committee. She contends that she would only have asked the union to file a grievance if the school committee had refused to grant her relief after being presented with the results of the Civil Service Commission proceeding that adjusted her seniority date. All of these arguments, taken together, carry the plaintiff's grievances (or complaints) well over the threshold of arguable meritoriousness.
The union also contends that the plaintiff's grievances concerning the period in which she was asked to perform the duties of a cafeteria helper, rather than a cook, are unmeritorious because there were no specific job descriptions in force. We have declared previously, however, that "a collective bargaining agreement impliedly includes past practices of the employee group as duties of employment." Lenox Educ. Ass'n v. Labor Relations Comm'n, 393 Mass. 276, 283 (1984). The plaintiff also notes that the collective bargaining agreement provides that "[p]ractices which are not expressly provided for or modified in specific terms of this agreement may remain in full force and effect during the life of this Agreement." The union's argument on this point, then, also is insufficient to bring the plaintiff's grievances *609 concerning her job duties below the threshold of arguable meritoriousness.
2. Demonstration that her grievances were arguably meritorious is insufficient, by itself, for the plaintiff to survive summary judgment. If the union's failure to press her grievances was the result of a reasonable and good-faith belief that her grievances were unmeritorious, the union was vested with the discretion not to pursue them. See Vaca v. Sipes, 386 U.S. 171, 192 (1967); Baker v. Local 2977, supra at 441; Trinque, supra at 199. Cf. Peabody Fedn. of Teachers, Local 1289, v. School Comm. of Peabody, 28 Mass. App. Ct. 410, 415 (1990). There must be "substantial evidence" of bad faith that is "intentional, severe, and unrelated to legitimate union objectives" in order to show a breach of the duty of fair representation. Amalgamated Assoc. of St., Elec. Ry. & Motor Coach Employees v. Lockridge, 403 U.S. 274, 301 (1971). Moreover, in order to survive summary judgment, the plaintiff must adduce "more than a `skeletal set of bland allegations'" in support of her contention that the union officials' motivations were improper. Williams v. Sea-Land Corp., 844 F.2d 17, 21 (1st Cir.1988).
In her complaint and affidavit, the plaintiff presented facts tending to show a history of hostility and animosity between herself and union officials, including the fact that she strongly and vocally opposed the merger that was effected in 1984; that she had testified, with success, before the Labor Relations Commission against the merger; that she had raised questions concerning union finances; and that, in response, she had been removed by the union president from her former position on the union's grievance committee. Moreover, the plaintiff observed that, during her time on the grievance committee, the union never refused to process any grievance raised by other employees. In contrast to the union's solicitude for other members, the union in this case refused to assist her. When the plaintiff requested written confirmation of that fact, the union president responded, "Don't hold your breath." The union also did not reply to a letter the plaintiff later wrote asking for assistance. Finally, the union's refusal to accept the Civil Service Commission's adjustment of the plaintiff's seniority date provides evidence *610 of bad faith. See Zimmerman, supra at 1320. Thus, the plaintiff has made a sufficient showing to survive summary judgment.
The plaintiff's position, however, is that there are no triable issues of fact and that she is entitled to summary judgment as a matter of law. Nonetheless, considering the facts in the light most favorable to the union, as we must for purposes of determining whether the plaintiff is entitled to summary judgment, we conclude that the union has shown that there are factual issues to be resolved at trial. The union points to the fact that the union's president in April, 1985, said that the union would not assist the plaintiff because of the president's belief that the plaintiff could not win. The union asserts that if that fact is believed by the fact finder, it would support the union's contention that it was lack of merit of the grievances, not improper motive, that caused the union to refuse to represent the plaintiff. The union also argues that some of the facts, including its failure to answer the plaintiff's letter, could be viewed by the fact finder as negligence, which is not sufficient, by itself, to constitute a breach of the duty of fair representation. See Allen v. Allied Plant Maintenance Co. of Tennessee, 881 F.2d 291, 297 (6th Cir.1989); Barr v. United Parcel Serv., Inc., 868 F.2d 36, 43-44 (2d Cir.1989); MacKnight v. Leonard Morse Hosp., 828 F.2d 48, 51 (1st Cir.1987). Thus, although it is a close question, we conclude that the union has demonstrated that there are triable factual issues.[4] Moreover, "[t]he granting of *611 summary judgment in a case where a party's state of mind or motive constitutes an essential element of the cause of action is disfavored." Quincy Mut. Fire Ins. Co. v. Abernathy, 393 Mass. 81, 86 (1984). See Godbout v. Cousens, 396 Mass. 254, 258 (1985). See also Cottrell v. Candy Workers Union Local 342, 630 F. Supp. 1081, 1087 (C.D. Ill. 1986) (summary judgment inappropriate in fair representation suit when motivation of union officials in question).[5]
II. Union arguments. 1. Primary jurisdiction. Citing Leahy v. Local 1526, Am. Fed'n of State, County, & Mun. Employees, 399 Mass. 341 (1987), the union asserts that the Labor Relations Commission has primary jurisdiction over the plaintiff's claims and thus that the action must be dismissed. We do not agree. At the time the plaintiff filed her complaint (February, 1986), the Leahy case had not been decided. In this case, as in Leahy, "[t]he plaintiff not only had no notice that prior resort to the commission would be required but [she] also reasonably relied on Federal and State precedent indicating that the courts had concurrent jurisdiction over cases concerning the duty of fair representation." Leahy, supra at 350-351. Moreover, there is no evidence that the plaintiff engaged in "forum shopping to seek undue advantage." Id. at 351.[6] We conclude, as we did in Leahy, "that it would be unfair, and would not serve the purposes of primary jurisdiction to dismiss the plaintiff's claim and thereby deny [her] a remedy." Id.
*612 2. Limitation of actions. Although it concedes that no specific statute of limitations applies to actions for breach of the duty of fair representation, the union argues that the plaintiff's claims are time-barred. It points to DelCostello v. International Bhd. of Teamsters, 462 U.S. 151 (1983), in which the United States Supreme Court decided that the statute of limitations in suits for breach of the duty of fair representation was six months, the statutory period in which charges of unfair labor practices must be brought before the National Labor Relations Board. The union contends that, because the Labor Relations Commission has established by regulation a six-month period in which charges of prohibited practices[7] may be brought, we should apply that limitation here by analogy and hold that the plaintiff's claims are barred. See 456 Code Mass. Regs. § 15.03 (1986). We disagree.[8]
The DelCostello case was specifically grounded in considerations of Federal policy. In DelCostello, the Supreme Court rejected the use of State statutes of limitation in unfair representation claims, because it determined that State statutes were "unsatisfactory vehicles for the enforcement of federal law.... `[I]t is the duty of the federal courts to assure that the importation of state law will not frustrate or interfere with the implementation of national policies.'" Id. at 161. Because the DelCostello case was based on Federal policy concerns, we decline to follow it with respect to actions for breach of the duty of fair representation arising under G.L.c. 150E.[9]
*613 Other State courts confronted with this issue have declined to follow the DelCostello case and have turned to various State statutes of limitation. In Baker v. Board of Educ. of West Irondequoit Cent. School Dist., 70 N.Y.2d 314 (1987), the New York Court of Appeals rejected the DelCostello rule as inapplicable to actions arising under the New York statute. Instead, the court determined that, because the Legislature was silent, the court would apply a six-year period of limitations, the period "prescribed for `an action for which no limitation is specifically prescribed by law.'" Baker, supra at 322. Similarly, the Rhode Island Supreme Court held that it would apply a three-year statute of limitations, the same as applicable in tort cases, to actions brought under State statutes for breach of the duty of fair representation. See McDonald v. Rhode Island Gen. Counsel, 505 A.2d 1176 (R.I. 1986). See also Church v. McBurney, 513 A.2d 22 (R.I. 1986).[10]
We therefore look to the law of the Commonwealth for guidance as to the limitations period. We believe that the three-year periods applicable to actions in tort and to actions for attorney malpractice are appropriate, although we need not decide which applies. See G.L.c. 260, §§ 2A & 4. The action is similar to a tort claim, because the aggrieved union member alleges a breach of duty by the union. The action also is similar to an attorney malpractice claim; a union member depends on the union to represent her in a quasilegal proceeding, the grievance procedure, and relies on the union's expertise and zeal in much the way a client relies on an attorney. See Leahy, supra at 353-354. Indeed, in DelCostello, the Court recognized that the analogy to legal *614 malpractice is "the closest state-law analogy for the claim against the union."[11]Id. at 167. Thus, we conclude that, whether G.L.c. 260, § 2A or § 4, applies, the plaintiff's claims are not time-barred.
3. Failure to join indispensable party. Pursuant to a settlement agreement, Graham dismissed her claim against her employer, the Quincy school committee. The union now contends that the action must be dismissed for failure to join the school committee, which it asserts is an indispensable party. See Mass. R. Civ. P. 19, 365 Mass. 765 (1974). This contention is without merit.
"Neither an employer nor a union is an indispensable party in an action against the other by an employee-union member when the action against the employer is based on a violation of the terms of the collective bargaining agreement and the action against the union is based on the statutory duty of fair representation." Kaiser v. Local No. 83, Int'l Bhd. of Teamsters, 577 F.2d 642, 644 (9th Cir.1978). See Leahy, supra at 353-354. The United States Supreme Court confirmed the fact that the employer is not an indispensable party to a fair representation action in Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry, 110 S.Ct. 1339 (1990), when it stated that an employee could sue "both the labor union and the employer or only one of those entities *615 ...." Id. at 1344. Accordingly, the union's argument that the complaint must be dismissed for failure to join the Quincy school committee is without merit.
4. Failure to amend complaint. The plaintiff filed an amended complaint in March, 1986, and did not thereafter amend the complaint to address issues occurring after the filing. In particular, the complaint makes no mention of the plaintiff's September, 1986, request that the union file a grievance because of her continued assignment to cafeteria helper's duties. The defendant argues that these issues therefore were not properly before the trial court and are not properly before us. We disagree.
In the plaintiff's affidavit in support of her motion for summary judgment, she referred to the events of September, 1986, as part of the basis of her claim that the union had violated its duty of fair representation. In opposition to the plaintiff's motion for summary judgment, the union presented an affidavit that replied to the plaintiff's allegations concerning the events of September, 1986. These circumstances compel the conclusion that the union consented to the court's consideration of these issues. See Mass. R. Civ. P. 15 (b), 365 Mass. 761 (1974).[12] The plaintiff's failure to amend the pleadings is immaterial. See Geraghty v. Mott's Shop-Rite of Holyoke, Inc., 377 Mass. 911, 912 (1979) (without further action by parties, pleadings would be deemed to include theories argued by the parties). See also Smith v. CMTA-IAM Pension Trust, 654 F.2d 650, 654 n. 2 (9th Cir.1981) ("where both parties have fully argued a claim below, we will treat the pleadings as though they have been amended for purposes of appellate review"). Accord National Medical Care, Inc. v. Zigelbaum, 18 Mass. App. *616 Ct. 570, 579 (1984); Republic Floors of New England, Inc. v. Weston Racquet Club, Inc., 25 Mass. App. Ct. 479, 487 (1988). The union's response to the plaintiff's affidavit is fatal to its argument that those issues are not before the court.
The judgment is vacated and the matter is remanded to the Superior Court for trial.
So ordered.
NOTES
[1] The union is the only party before us. The claims against the other parties either were dismissed or settled.
[2] On appeal, the union contends that the Civil Service Commission was incorrect in adjusting the plaintiff's seniority date. The union provides no legal argument; it cites no authority to the effect that the parties were free to ignore the Civil Service Commission decision. The union's bald assertion of error by the Civil Service Commission does not rise to the level of an appellate argument. See McCone v. New England Tel. & Tel. Co., 393 Mass. 231, 236 (1984). See Mass. R.A.P. 16 (a) (4), as amended, 367 Mass. 921 (1975). We add that it is inappropriate to challenge the correctness of the decision of the Civil Service Commission in these proceedings. See Director of Division of Employment Sec. v. Mattapoisett, 392 Mass. 858, 860 (1984). Moreover, we note that it was the union that originally sought relief on the plaintiff's behalf. We do not reach or consider whether, in these circumstances, issue preclusion bars the union's raising this issue, see generally Fidler v. E.M. Parker Co., 394 Mass. 534 (1985), or whether the union's conduct estops it from raising the issue. See Brown v. Quinn, 406 Mass. 641, 645-646 (1990).
[3] The plaintiff argues that what she sought was not necessarily that grievances be filed on her behalf but that she be assisted and represented in the apparently rather informal relationship between the union and the school committee.
[4] We note, however, that the union's affidavit in opposition to the plaintiff's motion for summary judgment nearly falls below the minimum required by Mass. R. Civ. P. 56 (e), which provides, in relevant part, that "[w]hen a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." 365 Mass. 824 (1974). See Godbout v. Cousens, 396 Mass. 254, 261 (1985).

The union's conclusory affidavit denied the plaintiff's account and relied heavily on the affiant's "belief" in the union's good faith. Generally, "[c]onclusory statements, general denials, and factual allegations not based on personal knowledge [are] insufficient to avoid summary judgment." Madsen v. Erwin, 395 Mass. 715, 721 (1985), quoting Olympic Junior, Inc. v. David Crystal, Inc., 463 F.2d 1141, 1146 (3d Cir.1972). Moreover, rule 56 (e) requires that affidavits "shall be made on personal knowledge," not belief. See Madsen v. Erwin, supra at 721.
[5] The plaintiff and the union have presented arguments on the question whether the union's failure to reply to the plaintiff's letter was itself a breach of the duty of fair representation. We believe that the factual issue of the union's motivation is the central issue in answering this question, and thus, that it is inappropriate for us to decide it.
[6] We note that the disputed factual issues in this case relate principally to the motivation of union officials, an area in which the Labor Relations Commission's expertise is not needed. Cf. Leahy, supra at 350.
[7] Prohibited practices under G.L.c. 150E are the Massachusetts analog of unfair labor practices under the National Labor Relations Act.
[8] The union does not contend, as it cannot, that the regulation, 456 Code Mass. Regs. § 15.03 (1986), applies to this situation. The union's argument is simply that we should apply the regulation by analogy to the situation in this case. Because we reject this argument, nothing in this opinion should be construed as casting doubt on the validity of the regulation.
[9] Previously we have held that the differences between G.L.c. 150E and the National Labor Relations Act were sufficient for us to depart in material respects from the scheme established by the National Labor Relations Act. See, e.g., Leahy v. Local 1526, Am. Fed'n of State, County, & Mun. Employees, 399 Mass. 341 (1987). We also previously have implied that we would not apply a six-month limitation period. See Leahy, supra at 350 (we would not require plaintiff to proceed in the Labor Relations Commission "because the six-month period ... has long since passed"). See also Trinque v. Mount Wachusett Community College Faculty Ass'n, 14 Mass. App. Ct. 191 (1982) (complaint filed in 1977 alleging bad faith failure to represent in 1974 and 1975).
[10] We note that none of these State courts turned to agency regulations as a source for determining appropriate periods of limitation.
[11] More recently, a plurality of the Supreme Court stated that "in the context of the Seventh Amendment inquiry [i.e., in the context of determining whether fair representation actions are more legal or equitable in nature for purposes of determining whether there is a constitutional right to a trial by jury in such cases], the attorney malpractice analogy does not capture the relationship between the union and the represented employees as fully as the trust analogy does." Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry, 110 S.Ct. 1339, 1346 (1990). Accordingly, for Seventh Amendment purposes, the Supreme Court declared that the best analogy was to a suit by a trust beneficiary against a trustee for breach of fiduciary duty. Id. Even if we were to follow that opinion on the issue of the applicable statute of limitations, it would not benefit the union. "It is settled that the statute of limitations does not begin to run in favor of a trustee against a beneficiary until the trustee has repudiated the trust and knowledge of that repudiation has come home to the beneficiary." Kearney v. Mechanics Nat'l Bank, 343 Mass. 699, 703 (1962).
[12] Rule 15 (b) provides, in relevant part, that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues."