Hinkle, J.
Plaintiffs are trustees of the Seal Harbor III Condominium Trust for a residential building in Winthrop, Massachusetts. The plaintiffs brought this action against various parties in connection with the design, construction, marketing and sale of the condominium building, including defendant architect ADD, Inc., defendant site engineer Vanasse Hangen Brustlin, Inc., and defendant subcontractor E-Poxy Industries, Inc.[1]
On February 16, 1995, I allowed the motions for summary judgment of defendants ADD, Inc. and Vanasse. The plaintiffs’ appeal of this decision was denied. Seal Harbor III Condo Trust v. Sanford A. Kaplan, Civ. No. 95-J-185 (App.Ct. April 4, 1995) (Dreben, J.). Now before me is plaintiffs’ motion under Mass.R.Civ.P 54(b) to revise and vacate that order. For the reasons set forth below I ALLOW that motion. Also before me is defendant E-Poxy’s motion for summary judgment on statute of limitations and economic loss doctrine grounds, which, for the following reasons, is DENIED.
BACKGROUND
Construction of Seal Harbor III began in the spring of 1986, and unit owners began occupying the building in August 1987. The general contractor, Sanford Construction Co., Inc., is a defendant in this case. Defendant ADD, Inc. was retained to provide design services, including preparation of plans and specifications for construction of the condominium building. ADD, Inc. retained the site engineering services of Vanasse, who also provided permit procurement services. ADD, Inc. certified the date of substantial completion to be August 11, 1987. Plaintiffs charge ADD, Inc. and Vanasse with negligence in designing and/or selecting materials for use in construction of the building.
Sanford Construction purchased an expansion/contraction joint system for use in the construction of the underground parking garage from defendant E-Poxy. The plaintiffs allege that E-Poxy (1) negligently breached its duty to use reasonable care *293 in selecting materials for and/or constructing and installing portions of the condominium building and (2) breached an express warranty “that the Condominium would be habitable in its location adjacent to the sea” as well as an implied warranty of “generally acceptable quality consistent with the intended residential use” of the building.
Within months of completion of the building, it leaked air and water. The plaintiffs allege that “[c]ontributing systems included the roof and related systems, the windows, the sliding glass doors, the masonry, sealant and flashing systems, the indoor pool and spa, the underground membrane and expansion joints.” The seawall failed; the roof on the underground garage leaked; and the joints connecting the garage to the condominium building, as well as to the neighboring property, failed. The plaintiffs brought this action on July 29, 1993.
DISCUSSION
The court allows summary judgment where there are no genuine issues of material fact and the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). A parly moving for summary judgment who does not bear the burden of proof at trial must demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party is unlikely to submit proof of that element at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). In considering a motion for summary judgment, this court “view[s] the facts in the light most favorable to the party opposing summary judgment.” Graham v. Quincy Food Service Employees Assoc. & Hospital, Library & Public Employees Union, 407 Mass. 601, 603 (1990).
1. Plaintiffs’ motion to revise and vacate summary judgment
Plaintiffs request that I revise and vacate, under Mass.R.Civ.P. 54(b), my February 16, 1995 order against them. By that order I granted summary judgment for defendants ADD, Inc. and Vanasse on the ground that the economic loss doctrine operated to bar such an action for costs of repair and replacement of defective property. The economic loss doctrine “provides that, when a defendant interferes with a contract or economic opportunity due to negligence and causes no harm to either the person or property of the plaintiff, the plaintiff may not recover for purely economic losses.” Garweth Corp. v. Boston Edison Co., 415 Mass. 303, 305 (1993).
The plaintiffs make the following arguments: (1) Whether a building defect is sufficiently extensive to constitute property damage under the economic loss doctrine is a question of fact; (2) newly discovered evidence shows that window specifications and architectural certification caused a risk of personal injury to building occupants and property damage within units and common areas; (3) newly discovered evidence may show that the defendants’ negligence caused and may cause damage to building systems not included in the plaintiffs’ claim of deficiency, such as walls and ceilings. Plaintiffs contend that on the record developed through discovery since my February, 1995 order, summary judgment is inappropriate because material facts are now in dispute, and thus judgment cannot be entered as a matter of law.
In a case involving multiple claims or multiple parties, any order or other form of decision “which adjudicates fewer than all claims or the rights and liabilities of fewer than all the parties ... is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.” Mass.R.Civ.P. 54(b). My February 1995 order stated that, absent evidence that defects in the design “created a dangerous condition posing risk of accidental injury to person or to property other than the physical deterioration attributable solely to the failure of the products of construction themselves,” the plaintiffs’ claims were barred by the economic loss doctrine. I am now persuaded that newly discovered evidence and recent case law warrant a reversal of that order.
The recent depositions of Michael Hass, Sanford A. Kaplan, and James Kfoury, together with the affidavits of Joyce Aldrich and Arthur J. Hayes, raise substantial questions of damage to individual units and personal properly in common areas, as well as the roles of ADD, Inc. and Vanasse in such damage. There is evidence in the summary judgment record that the negligent acts of the defendants caused physical harm, principally the result of rain penetration, to the building, individual units, and cars parked in the garage. The summary judgment record also suggests a possible risk of personal injury from structural or material failure.
Further, since my prior decision, the Appeals Court has held that a plaintiff could recover under a negligence theory where he suffered economic losses as a result of damage to property in his possession but not his own. Priority Finishing Corp. v. LAL Construction Co., 40 Mass.App.Ct. 719 (1996). In that case, the plaintiff was in the business of custom dyeing and finishing raw fabrics for which he was the bailee. ”[P]laintiff not only sustained damage to the bailed fabrics in its possession but also reimbursed the owners of the fabrics for their replacement value.” Id. at 721. The court stated that “in these circumstances we conclude that the economic loss doctrine does not apply because the plaintiffs pecuniary losses are derived from physical harm to property for which the plaintiff has a right to recover. ” Id. See also American Tel. *294 & Tel. Co. v. IMR Capital Corp., 888 F.Sup. 221, 247 (D.Mass. 1995) (allegation of failure to block fraudulent phone calls did not state a claim because “[i]n Massachusetts, a plaintiff may not recover under a negligence theory for purely commercial losses, not grounded in physical harm”). See Garweth, supra (oil spill caused delay in contract work but did not result in damage to person or property of plaintiff); FMR Corp. v. Boston Edison Co., 415 Mass. 393 (1993) (power outage causing loss of business transactions not recoverable in absence of personal injury or property damage).
Here, the plaintiffs in this case allege that the faulty design and selection of items such as windows resulted in physical damage to common areas and individual units. In light of Priority Finishing Corp., I find and rule that the plaintiffs’ claims are not barred by the economic loss doctrine because the alleged negligence caused harm to the condominium building, for which the plaintiffs have a right to recover.[2]
2. E-Poxy’s motion for summary judgment based on the economic loss doctrine
In addition to the foregoing reasons, defendant E-Poxy’s motion for summary judgment invoking the economic loss doctrine is denied because the plaintiffs’ affidavits allege damage to property other than the failed expansion joints themselves, such as the garage itself and cars. See Marcil v. John Deere Industrial Equipment Co., 9 Mass.App.Ct. 625, 631 (1980) (“the purchaser of a manufactured product who claims as damages only economic loss or damage caused by the product to itself cannot maintain a claim for negligent design or manufacture”). Material issues of fact concerning the nature and extent of damage allegedly caused by E-Poxy’s failed product are in dispute and summary judgment is therefore unwarranted.
3. E-Poxy’s motion for summary judgment based on the statute of limitations
E-Poxy argues that the three-year statute of limitations period for common law negligence claims under G.L.c. 260, Sec. 2B and for product warranly claims under G.L.c. 106, Sec. 2-318 bars the plaintiffs’ action. E-Poxy points to, among other things, communications between its representatives and the predecessor trustees as evidence that the plaintiffs were aware of a problem with the expansion joint system some six years before they filed this action.
Plaintiffs claim that they continued to suffer injuries as the result of E-Poxy’s product at the time of filing of this action, and continue to sustain such injuries today. Water penetration studies were conducted in July 1993, and in the fall of 1995, the latter focusing on the expansion joint system.
A claim of negligence or breach of warranty against a manufacturer, seller, or supplier of goods “shall be commenced within three years next after the date the injury and damage occurs.” G.L.c. 106, Sec. 2-318. A manufacturer who supplies a construction component that becomes an integral part of a building structure is subject to the limitations period of Section 2-318. Dighton v. Federal Pacific Elec. Co., 399 Mass 687 (1987) (producer of circuit breaker panel held producer and supplier of goods subject to Section 2-318, and not an economic actor akin to architects and contractors subject to six-year statute of repose of G.L.c. 260, Sec. 2B). Both the plaintiffs’ claims against E-Poxy are governed by the statute of limitations of Section 2-318.
Under Section 2-318, the limitations period commences on “the date of injury and damage,” meaning not “from the time when the injury is first perceived,” but rather “the time when the damage flowing from the injury can fairly be estimated.” Cameo Curtains, Inc. v. Philip Carey Corp., 11 Mass.App.Ct. 423, 425 (1981) (breach of warranty action concerning roofing materials). The time when damage flowing from injuries resulting from E-Poxy’s joint expansion product may fairly be estimated is a material issue of fact for the jury. See id. Thus, summary judgment is not warranted on statute of limitations grounds.[3]
ORDER
For the foregoing reasons, it is hereby ORDERED that the plaintiffs’ motions to revise and vacate this court’s prior order of summary judgment for ADD, Inc. and Vanasse Hangen Brustlin Inc. be ALLOWED and defendant E-Poxy’s motion for summaiy judgment be DENIED.

 E-Poxy denies being a sub-contractor, although the complaint describes the company as such. E-Poxy states that it is a “material provider.”

 My decision on the economic loss doctrine, as applied in these circumstances to the architect and the site engineer, is consistent with two recent Superior Court decisions. In Gateway Condominium Trust v. Clinton, the court (Welch, J.) found that a negligence claim against a structural engineer, assuming the economic loss doctrine applied, lay outside the scope of the doctrine where the plaintiff suffered damage to windows and walls as a result of an allegedly defective engineering plan. The plaintiff did not seek the costs of a new structural design, but rather the costs of repairing the resulting property damage. Further physical damage included water and air seepage into the units. The court rejected the defendant’s argument that the trustees’ authority was limited to the common areas, stating that “[a]dopting the defendant’s logic on this point would absolve those providing professional services from liability for faulty work performed on the infrastructure of [a] building based on the peculiar relationship between individual units and common areas.” 6 Mass. L. Rptr. No. 7, 133, 134 (January 13, 1997). In Gailunas v. SPQR Mgmt. Assoc, Inc., the court (Cowin, J.) denied summary judgment motions on negligence claims by an architect, a window and sliding glass door marketing and distributing company, and a building facade distributor and supplier. Relying on Priority Finishing Corp., supra, the court concluded that the economic loss doctrine did not bar plaintiffs negligence claims where the plaintiffs “pecuniary losses are derived from physical harm to their property” caused by water penetration through a defective facade, windows, and sliding doors. Civil No. 92-2626, 6 Mass. L. Rptr. 311 (Norfolk Super. Ct. January 14, 1997).

 There is also a question for trial as to whether the discovery rule applies to this case.