JAMES M. BLAUVELT *vs.* AFSCME COUNCIL 93, LOCAL 1703.

No. 08-P-595.

Middlesex. April 2, 2009. - August 7, 2009.

Present: LENK, KANTROWITZ, & WOLOHOJIAN, JJ.

*Labor,* Fair representation by union. *Damages,* Fair representation by union. *Charity. Practice, Civil,* Instructions to jury, Special questions to jury. *Jurisdiction,* Primary jurisdiction.

In a civil action by a member of a union against that union for breach of the duty of fair representation, the judge did not abuse his discretion in denying the union leave to amend its answer to raise, as an affirmative defense, the charitable immunity cap on damages imposed by G. L. c. 231, § 85K, where the union failed to demonstrate that it was a charity within the meaning of the statute, rather than an organization existing for the primary benefit of its membership [797-798]; further, the judge's instruction to the jury adequately informed the jury that mere negligence was not enough to constitute a breach of the duty of fair representation [798-799].

In a civil action by a member of a union against that union for breach of the duty of fair representation, where the union alleged that the member's medical condition was a superseding cause that limited his entitlement to damages, the judge, who properly instructed the jury concerning that issue, did not err in declining to include in the special verdict form a separate question specifically using the phrase "superseding cause" [799-800]; further, there was no merit to the union's contention that the judge incorrectly refused to permit testimony about a town's policies for sick employees [800], and the judge did not err in denying the union's motion for judgment notwithstanding the verdict [801].

Although a civil action by a member of a union against that union for breach of the duty of fair representation should originally have been filed with the Labor Relations Board (board), this court concluded that dismissal based on the doctrine of primary jurisdiction was not required, where the union deliberately and strategically abandoned the doctrine at the trial level and did not raise the issue on appeal; where the case had been fully tried to a jury, who made credibility assessments and factual findings that the board did not need to revisit; where at least one issue of law that was raised did not involve the board's special authority or expertise; and where a manifest injustice would occur were this court to dismiss, in that the member's claim would be time barred if presented now to the board. [801-803]

CIVIL ACTION commenced in the Superior Court Department on April 11, 2003.

The case was tried before *Kenneth J. Fishman*, J., and motions for new trial and for judgment notwithstanding the verdict were heard by him.

*Brian J. Rogal* for the defendant.

*William J. Dailey, Jr.,* for the plaintiff.

*Donald Siegel, Indira Talwani, & Louis A. Mandarini*, for Massachusetts AFL-CIO, amicus curiae, submitted a brief.

WOLOHOJIAN, J. The defendant, AFSCME Council 93, Local 1703 (union), appeals from an amended judgment entered after an eight-day jury trial, awarding the plaintiff, James Blauvelt, significant damages[1] on his claim against the union for breach of the duty of fair representation. For the reasons set out *infra*, we affirm.

*Background.* On March 13, 2001, the town of Bedford (town) held a hearing to determine what, if any, disciplinary measures it ought to take against five employees, including Blauvelt, based on allegations that each had falsified time records and defrauded the town. Blauvelt, like the others, was represented by the union under a collective bargaining agreement (CBA) then in place between the union and the town. Blauvelt was a fourteen year veteran of the town's public works department.

Ultimately,[2] the town manager sent a letter dated April 13, 2001, to the employees, including Blauvelt, of the town's decision to terminate their employment, effective as of April 14, 2001. The letter was delivered by hand to Blauvelt on Monday, April 16, 2001, which was Patriots' Day. The union office was closed that particular day, and union officials were not available to be reached for advice. Blauvelt spoke with a union official the following day, Tuesday, April 17.

On Friday, April 20, 2001, the union submitted written grievances, including one for Blauvelt, to the town to contest the job terminations. In turn, the town took the position that the griev-

---

[1]The amended judgment was for $315,968, with interest at the rate of twelve percent on $52,416 of that amount for the period from April 11, 2003, through April 25, 2006.

[2]Initially, in February, 2001, the town sent two written notices to Blauvelt, detailing alleged misconduct. Those letters varied in some material detail from the later notice delivered in April, 2001, which made "new allegations" against him.

ances, including Blauvelt's, were untimely, citing art. 7 of the CBA. Article 7, § 2, provides:

> "[A] grievance involving discharge must be in writing and must be received by the Employer within three (3) working days from the date of discharge. In the event a grievance involving a discharge is not filed within such time, the discharge shall be deemed to be for just cause and shall not be subject to arbitration."

Not deterred by the town's stance, the union demanded arbitration, but the town was successful in having the arbitration stayed by a Superior Court judge.

After an unsuccessful petition to a single justice of this Court, a different Superior Court judge determined that the grievances had not been timely submitted to the town. From a corrected judgment that allowed the town's stay application, the union pursued an appeal. See G. L. c. 150C, § 16. This court vacated the judgment of the Superior Court in favor of the town and remanded the case to the Superior Court for the entry of an order denying the stay application and directing the parties to proceed to arbitration. *Bedford* v. *AFSCME Council 93, Local 1703*, 69 Mass. App. Ct. 110, 111-112 (2007) (*Bedford*).[3]

While *Bedford* was pending, Blauvelt filed this action in Superior Court, claiming that the union had committed a breach of its duty of fair representation.[4] The case was eventually tried to a jury, with the resulting verdict for the plaintiff. See note 1, *supra*.

On appeal, the union contends that it was entitled to plead the charitable immunity cap on damages provided by G. L. c. 231, § 85K, as an affirmative defense and that certain errors were made in the jury instructions and in the exclusion of evidence pertaining to its defense of superseding cause.[5,6] We address first

---

[3]The arbitration resulted in a decision that the grievance was time barred.

[4]He also asserted claims of breach of the duty of fair representation, interference with advantageous business relations, and intentional infliction of emotional distress against two union officials: John Gordon (business agent) as well as Douglas Parks (president of the local union). The parties later stipulated to the dismissal of the claims against the individual union representatives.

[5]The Massachusetts AFL-CIO filed an amicus brief arguing, among other things, that an incorrect measure of damages was used. The union did not raise this issue either below or on appeal and it is, accordingly, waived. *Shafir*

the issues raised by the union. We conclude by addressing the doctrine of primary jurisdiction, which we raised on our own initiative.

1. *Charitable immunity cap.* The union argues that it should have been granted leave to amend its answer in order to raise the statutory cap on damages imposed by G. L. c. 231, § 85K, as an affirmative defense. We review to determine whether the motion judge abused his considerable discretion in denying the motion. *Harvard Law Sch. Coalition for Civil Rights* v. *President & Fellows of Harvard College*, 413 Mass. 66, 72 (1992).

Section 85K limits tort liability of a charitable entity to $20,000. See, e.g., *Keene* v. *Brigham & Women's Hosp., Inc.*, 439 Mass. 223, 238-239 (2003); *Ayash* v. *Dana-Farber Cancer Inst.*, 443 Mass. 367, 391, cert. denied sub nom. *Globe Newspaper Co.* v. *Ayash*, 546 U.S. 927 (2005). To be shielded by § 85K, a defendant must show: (a) it is a charity, and (b) the injury it may be held responsible for, under tort law principles, occurred in the course of activities that "accomplish directly" its charitable purposes.[7] *Conners* v. *Northeast Hosp. Corp.*, 439 Mass. 469, 479 (2003). "An institution will be classed as charitable if the dominant purpose of its work is for the public good and the work done for its members is but the means adopted for this purpose." *Harvard Community Health Plan, Inc.* v. *Assessors of Cambridge*, 384 Mass. 536, 544 (1981), quoting from *Massachusetts Med. Soc.* v. *Assessors of Boston*, 340 Mass. 327, 332 (1960). Here, the union failed to demonstrate that it was a charity within the definition of the statute, rather than an organization existing for the primary benefit of its membership. The fact that the union's activities are not inconsistent with

v. *Steele*, 431 Mass. 365, 371 (2000) (issue of damages waived). *First Natl. Bank of Boston* v. *Ibarra*, 47 Mass. App. Ct. 660, 663 n.2 (1999) (same).

[6]Although the union also argues that the judge erred in denying its motion for judgment notwithstanding the verdict, it raises no arguments pertaining to the denial of that motion beyond those relating to its defense of superseding cause.

[7]"Section 85K applies only in limited circumstances where damages flow from a tort 'committed in the course of any activity carried on to accomplish directly [a defendant's] charitable purposes.' " *Ayash* v. *Dana-Farber Cancer Inst.*, 443 Mass. at 391, quoting from § 85K. The court has ruled the charitable cap "does not apply to most statutory violations, unless there is a 'tort' within the meaning of the statute." *Ayash* v. *Dana-Farber Cancer Inst., supra.*

broader public policy, as reflected in G. L. c. 150A, does not transform the union from an organization existing primarily for the benefit of its members into one existing primarily for the public good. Accordingly, the judge did not abuse his discretion in denying the union's motion seeking leave to amend its answer to assert the defense. *Keville* v. *McKeever*, 42 Mass. App. Ct. 140, 149 (1997) (no abuse of discretion in denying motion to amend answer where amendment would have been futile).

2. *Jury instructions.* The union argues that the judge should have given a jury instruction that the "mere failure to meet a deadline, without more, is not evidence of inexcusable neglect" that constitutes a breach of the duty of fair representation. For this proposition, the union cites only to a case decided by the United States Court of Appeals for the Ninth Circuit, *Patterson* v. *International Bhd. of Teamsters, Local 959*, 121 F.3d 1345 (9th Cir. 1997), cert. denied, 523 U.S. 1106 (1998). We have carefully reviewed the *Patterson* decision and see nothing in it that stands for the proposition urged by the union. We note, too, that the case does not involve a claim brought under G. L. c. 150E.

To the extent that the union is also arguing that the jury instructions did not adequately inform the jury that mere negligence is not enough to constitute a breach of the duty of fair representation, that argument is without foundation in the record.[8] The instructions were fully consistent with our cases defining the

---

[8]The charge given to the jury included the following:

"Now, Unions are permitted a wide range of reasonableness in representing the often conflicting interests of employees, and therefore, Unions are vested with considerable discretion not to pursue a grievance as long as the Union's actions are not improperly motivated, arbitrary, perfunctory, or demonstrative of inexcusable neglect.

". . .

"A Union does not breach its duty of fair representation by acting negligently. Rather, to find that the Union acted arbitrarily means that you must find that the Union was, in the circumstances present in this case, grossly inattentive, grossly negligent, or that its conduct constituted inexcusable neglect.

"Now, stated another way, although ordinary negligence may not amount to a denial of fair representation, a lack of a rational basis for a Union decision and the egregious unfairness or reckless omissions or disregard

contours of a claim for breach of the duty of fair representation under G. L. c. 150E, § 10, and sufficiently apprised the jury that liability could not be predicated upon mere negligence. See *Goncalves* v. *Labor Relations Commn.*, 43 Mass. App. Ct. 289, 293 (1997), quoting from *Graham* v. *Quincy Food Serv. Employees Assn. & Hosp., Library & Pub. Employees Union*, 407 Mass. 601, 606 (1990) ("Unions are permitted 'a wide range of reasonableness' in representing the often-conflicting interests of employees; hence, unions are vested with considerable discretion not to pursue a grievance, as long as their actions are 'not improperly motivated, arbitrary, perfunctory or demonstrative of inexcusable neglect' ").

3. *Superseding cause.* A few weeks after his discharge, Blauvelt suffered a stroke, which the union contends would have prevented him from returning to work, regardless of whether he had won reinstatement. Thus, the union concludes, Blauvelt's medical condition was a superseding cause that limited his entitlement to damages. In this regard, the union makes three arguments: first, that the special verdict form should have included a question pertaining to superseding cause; second, that the judge erred when he limited the town manager's testimony regarding the town's practices relating to holding jobs open for sick employees; and third, that the union's motion for judgment notwithstanding the verdict should have been granted given the evidence of Blauvelt's medical condition.

"The nature, scope, and form of special questions submitted to a jury pursuant to Mass. R. Civ. P. 49(a), 365 Mass. 812

for an individual employee's rights may result in the denial of fair representation.

"Now, this term gross negligence is substantially and appreciably higher in magnitude than ordinary negligence. It is not simple inadvertence. It is an act or omission related to a legal duty, here the duty of fair representation, that is of an aggravated character as distinguished from a mere failure to exercise ordinary care. Gross negligence is a manifestly smaller amount of watchfulness and circumspection that the circumstances require of a person of ordinary prudence. It falls short of being such reckless disregard of probable consequences as is equivalent to a wilful and intentional wrong. Some of the common indicia o[f] gross negligence are deliberate inattention, or voluntary incurring of an obvious risk, or impatience of reasonable restraint, or persistence in a palpably negligent course of conduct over an appreciable period of time."

(1974), are matters within the discretion of the trial judge." *Everett* v. *Bucky Warren, Inc.*, 376 Mass. 280, 291 (1978). "We view the questions submitted to the jury in light of the instructions given by the judge." *Draghetti* v. *Chmielewski*, 416 Mass. 808, 818 (1994). Here, the union concedes that the judge properly instructed the jury concerning superseding cause. "The instructions enabled the jury to understand their duty in answering the questions on the verdict form." See *id.* at 818-819.[9] There was no error in the judge's refusal to include a separate question using the specific phrase "superseding cause." Nor do we perceive any risk that the jury misunderstood their task with respect to awarding damages in the absence of such a separate question.

We are equally unpersuaded by the union's argument that the trial judge incorrectly refused to permit the town manager to answer certain questions regarding the town's policies for sick employees. The town manager was permitted to testify about a broad range of topics relating to the way that the town handles the absences of employees who are out for prolonged periods because of medical problems. On the ground that no foundation had been laid, however, the judge sustained objections to questions that sought the town's "practice" in this regard. The judge was correct; no foundation had been laid that there was a practice because the situation had occurred only once before.

---

[9]Moreover, the issue of superseding cause was fairly encompassed by the special verdict questions asking whether Blauvelt's stroke had prevented him from returning to work and, if so, for how long. See *Everett* v. *Bucky Warren, Inc.*, 376 Mass. at 291-292. Specifically the questions were:

> "Q3. Did the defendant prove that for any period subsequent to the plaintiff's discharge from employment the plaintiff was either unable to work due to some medical condition or conditions, or that he failed to mitigate damages by looking for work?"

The jury's answer to question three was "yes."

> "Q4. If your answer to Question 3 is 'YES', then state the period or periods during which the Defendant has proven that the plaintiff was unable to work or failed to mitigate damages by looking for work."

The jury responded to question four with the period beginning May 1, 2001, and ending November 1, 2004. The jury awarded back pay from November, 2004, through the time of trial, April, 2006, in the amount of $52,416. Front pay in the amount of $263,552 was also awarded. These amounts corresponded with the testimony of the union's expert witness on damages.

Finally, viewing the evidence in the light most favorable to Blauvelt, and drawing all inferences from it in his favor, see, e.g., *D'Annolfo* v. *Stoneham Hous. Authy.*, 375 Mass. 650, 657 (1978), we conclude that the judge did not err in denying the union's motion for judgment notwithstanding the verdict. There was sufficient evidence to support the jury's verdict that Blauvelt was not medically precluded from returning to work, including the testimony of Blauvelt's expert, Dr. Aroesty.[10]

4. *Primary jurisdiction.* Although primary jurisdiction was pleaded by the union as an affirmative defense in its answer, the union did not further raise the issue either below or here on appeal. This appears to have been a deliberate, strategic abandonment of the doctrine: the union served a motion to dismiss based on the doctrine and received an opposition from the plaintiff under the packaging procedure of Superior Court Rule 9A (2004),[11] but it neither filed that motion nor made any other attempt to dismiss or stay the Superior Court action in favor of proceeding before the Labor Relations Board (board). The Supreme Judicial Court has recently clarified that primary jurisdiction cannot be waived. *Everett* v. *357 Corp.*, 453 Mass. 585, 609 (2009). Accordingly, we address the doctrine on our own initiative, having requested and received submissions from the parties pursuant to Mass.R.A.P. 16(l), as amended, 386 Mass. 1247 (1982), regarding the doctrine and its application to the circumstances of this case.

Where an agency has statutorily been granted *exclusive* authority over a particular issue, the doctrine of primary jurisdiction requires that a court refer the issue to the agency for adjudication in the first instance. *Everett* v. *357 Corp., supra* at 609-610 (because Department of Transportation [DOT] has exclusive statutory authority over issue of truck driver qualification, doctrine of primary jurisdiction required that issue be referred to DOT and that Superior Court action be stayed). Where, however, no statute has conferred exclusive authority to the agency,

---

[10]Dr. Aroesty testified that the plaintiff would have been able to continue to work at his position for the town from the time that he was terminated; his medical conditions did not preclude him from working.

[11]Indeed, before serving the motion, the union had filed it directly with the court. Because it did not comply with rule 9A, however, the motion was rejected.

primary jurisdiction is "a doctrine exercised in the discretion of the court." *Columbia Chiropractic Group, Inc.* v. *Trust Ins. Co.*, 430 Mass. 60, 62 (1999).

The legislative scheme of G. L. c. 150E contemplates a "primary," but nonexclusive, role for the board in adjudicating cases concerning the duty of fair representation. *Leahy* v. *Local 1526, Am. Fedn. of State, County, & Mun. Employees*, 399 Mass. 341, 347 (1987). Thus, although a claim for breach of the duty of fair representation in most instances should be presented first to the board, *ibid.*, referral to the agency may not be required depending on a number of factors, including whether the issue is of one within the particular expertise of the agency, whether there are factual issues to be resolved, and whether nonparties will be affected by the decision. *Id.* at 347-348 (after taking various case-specific factors into account, declining to dismiss action under primary jurisdiction doctrine). See *Harrison* v. *Massachusetts Soc. of Professors/Faculty Staff Union/MTA/ NEA,* 405 Mass. 56, 59-60 (1989) (same); *Graham* v. *Quincy Food Serv. Employees Assn. & Hosp., Library & Pub. Employees Union,* 407 Mass. at 611 (same); *Columbia Chiropractic Group, Inc.* v. *Trust Ins. Co.,* 430 Mass. 60, 62 & n.2 (1999) (same); *Uniformed Firefighters of Ludlow, Local 1840* v. *Selectmen of Ludlow,* 29 Mass. App. Ct. 901, 902-904 (1990) (same).

Here, although we are convinced that the action should originally have been filed with the board,[12] a number of factors convince us that, at this advanced stage of these proceedings, dismissal based on primary jurisdiction is not required.[13] Among the factors militating against dismissal on the basis of primary jurisdiction are the union's deliberate abandonment of the doctrine below, combined with the decision not to raise the issue on appeal. Although the doctrine cannot be waived, these strategic choices indicate that the union (a sophisticated litigant in this

---

[12]We wish to emphasize the point that the plaintiff here should have filed his claim with the board. It is only because of the unique circumstances of this case (including the union's deliberate abandonment of the doctrine and the injustice that would result) that we are exercising our discretion not to dismiss the case.

[13]The alternative, a stay, would be pointless because the deadline for filing a claim with the board has long passed. See 456 Code Mass. Regs. § 15.03 (1999).

arena, fully familiar with the expertise and competence of the board) did not believe that the board's expertise was necessary. In addition, we see no benefit (and the union has not identified any) in invoking this doctrine at this point in this litigation: the case has been fully tried to a jury, at significant cost to the Commonwealth, and the jury have already made credibility assessments and factual findings that are not being questioned and need not be revisited by the board. Further, at least one issue of law that has been raised — whether the union is entitled to the charitable immunity cap — does not involve the board's special authority or expertise. Finally, we are concerned that a manifest injustice would occur were we to dismiss the case based on primary jurisdiction in light of the union's position that the plaintiff's claim would be time barred were it presented now to the board. See note 13, *supra.*

Although the *Everett* decision extensively discusses the doctrine of primary jurisdiction, the decision to remand the case to the Superior Court for the entry of a judgment of dismissal rested on the Supreme Judicial Court's determination that there was a lack of subject matter jurisdiction pertaining to the claims. It was because of the absence of subject matter jurisdiction in that case that the court was compelled to employ the "drastic remedy" of directing that a judgment of dismissal enter after a jury had returned a verdict in favor of the plaintiff. As the court observed, "Seldom does an appeal present itself to us in a posture that requires us to nullify an entire, completed civil jury trial." *Everett* v. *357 Corp.*, 453 Mass. at 611-612. Here, however, there is no absence of subject matter jurisdiction. After an eight-day jury trial in which neither the parties nor the judge sought to invoke the doctrine of primary jurisdiction, we will not exercise our discretion to nullify the amended judgment that entered in this case.

For the reasons set out *supra*, the amended judgment is affirmed.

*So ordered.*