## PLYMOUTH POLICE BROTHERHOOD *vs.* LABOR RELATIONS COMMISSION.

Suffolk. November 3, 1993. - April 8, 1994.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & GREANEY, JJ.

*Labor Relations Commission. Labor*, Judicial review. *Public Employment*, Suspension.

The Labor Relations Commission did not abuse its discretion in concluding that a labor union had not established probable cause to believe that a town had suspended a police officer for his protected activity rather than for insubordinate and demeaning remarks concerning certain town officials in a message sent over the police department's computer network to his fellow employees. [439-441]

APPEAL from a decision of the Labor Relations Commission.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*William M. Straus* (*Richard M. Bennett* with him) for the plaintiff.

*Tammy L. Brynie* for the defendant.

LIACOS, C.J. The Plymouth Police Brotherhood (union), the recognized collective bargaining agent for patrolmen in Plymouth, filed a charge of a prohibited labor practice with the Labor Relations Commission (commission). G. L. c. 150E (1992 ed.). The charge concerned a five-day suspension imposed on John Abbott, a Plymouth police officer and the president of the union. Abbott's suspension followed the dissemination of an electronic mail message over the police department's computer by him to fellow patrolmen. The chief of police suspended Abbott because he concluded that the message constituted insubordination and conduct unbecom-

ing a police officer. This decision was affirmed by the board of selectmen of Plymouth (town).

The commission dismissed the union's charge; it affirmed the dismissal on reconsideration. The union filed an appeal with the Appeals Court. G. L. c. 150E, § 11 (1992 ed.). *Quincy City Hosp.* v. *Labor Relations Comm'n,* 400 Mass. 745, 747 (1987) (holding prehearing dismissal of complaint to be "final order"). We transferred the case here on our own motion. On appeal, the union argues: (1) that it was a violation of the First Amendment to the United States Constitution and art. 16 of the Declaration of Rights of the Massachusetts Constitution[1] for the commission to dismiss the charge because Abbott's suspension resulted from his communication to other union members on a matter of public concern; and (2) that the commission erred, under c. 150E, in refusing to issue a complaint. We conclude that the commission acted within its discretion in dismissing the union's complaint.

The facts are these. John Abbott has been a member of the Plymouth police department since 1980. At the time of the incident giving rise to his suspension, Abbott was serving as president of the union. On April 18, 1991, Abbott transmitted an electronic mail message to the other members of the union regarding an ongoing dispute with the town over implementation of contract provisions providing hepatitis B vaccinations. The entire text of the message is set forth below.[2]

---

[1]However, the union makes no claim in its brief that art. 16 provides greater protections than does the First Amendment.

[2]"As you are well aware the town's negotiating team (Fedrini, Lenox, Arons) is doing everything they can to delay the implementation of the Hep 'B' shots. There really isn't too much we can do, except make everyone aware that those people (Fedrini, Lenox, Arons) are pigs, cheats, liars, whatever!!!!

"We can never forget what the town's negotiators did and that they are terrible employers . . . They just don't care about us.

"We can not loose site [*sic*] of the objective of getting the Hep 'B' shots

Someone (not Abbott) printed the message and posted it on the union bulletin board in the police station locker room. On May 3, 1991, the town's chief of police notified Abbott that, as a result of the message, he was suspended for five days, without pay, for insubordination and conduct unbecoming a police officer. The chief of police acknowledged that Abbott was "speaking about a collective bargaining matter."

In its charge of prohibited practice, the union alleged that Abbott's suspension was for "engaging in protected, concerted activity" and that "[t]his interference with protected union rights is a statutory violation, as well as an interference with rights guaranteed under the state and federal constitutions." The commission declined to issue a complaint, finding that "[t]he facts do not support a theory that [Abbott's] punishment was illegally motivated." It noted that: "The fact that speech takes place within the context of protected activities does not preclude an inquiry into the nature of the statements made. Instead, a balance must be struck in each case between the rights of employees to engage in concerted activities and the rights of employers not to be subjected to egregious, insubordinate, or profuse remarks which disrupt the employer's business or demean workers or supervisors. *Harwich School Committee*, 2 MLC 1095, (1975)."

On reconsideration of the charge, the commission affirmed its dismissal, concluding that:

> "[T]he investigation failed to disclose that written references to Town officials as 'pigs, liars, cheats,' and requests that fellow employees disseminate these characterizations were within the grounds of normal behavior

and must maintain that course, most likely it will be after July 1991. . . .

"Remember what Fedrini, Lenox, Arons have done, remember they lied and cheated, we can never trust them. . . . This isn't the first time they have done this . . . and . . . it won't be the last.

"As a union, we must continue to fight for our rights and fair treatment. . . . You [*sic*] support is needed. . . . It is you . . . who has [*sic*] been lied to and cheated by the town.

"Any question contact me . . .

"John"

or may have been excused because they occurred during a heated face-to-face exchange in such context as a bargaining session or grievance hearing. The statements were made as a computer mail message upon the police department's computer system, a situation providing sufficient time for reflection upon the contents of the message. The investigation did not disclose probable cause to believe that [Abbott's] suspension was because of his protected activity rather than the nature of the statements themselves."

It is from this decision that the union appeals. See *Quincy City Hosp., supra.*

The union devotes a substantial portion of its brief to a discussion of a public employee's right to speak freely about matters of public concern. See *Pickering* v. *Board of Educ.,* 391 U.S. 563 (1968). We agree with the commission that this is not a case about John Abbott's First Amendment rights. Whether John Abbott has a constitutionally protected right to call town officials "pigs, cheats, [and] liars," and whether, using the police department's computer system, he may urge fellow officers to do the same, was not the question before the commission and it is not the question before this court. The issue in this case is whether the commission acted invalidly when it determined that there was no probable cause to believe that the town violated its obligations under c. 150E by suspending Officer Abbott. See *Alexander* v. *Labor Relations Comm'n,* 404 Mass. 1005, cert. denied, 493 U.S. 955 (1989). G. L. c. 150E, § 11.

The commission's task, defined by the Legislature, is to administer and interpret the public employee collective bargaining law. In this case, the commission had before it a charge that the town had suspended Abbott for engaging in "protected, concerted activity" within the meaning of G. L. c. 150E.[3] The union appears to argue that "lawful, concerted

---

[3]General Laws c. 150E, § 2 (1992 ed.), guarantees employees the right "to engage in lawful, concerted activities for the purpose of collective bargaining or other mutual aid or protection, free from interference, restraint,

activities" must be analyzed by the commission as if it is co-extensive with the protections afforded to speech by the First Amendment and art. 16. There is no legal support for such a claim. See *Hudgens* v. *NLRB*, 424 U.S. 507, 521 (1976) ("The task of the [NLRB] and the reviewing courts under the [National Labor Relations Act] . . . stands in conspicuous contrast to the duty of a court in applying the standards of the First Amendment . . ."). Just because an individual may have a constitutional right to engage in certain behavior, it does not follow that this behavior constitutes "protected, concerted activity."[4]

Our review of the commission's determination that Abbott's suspension did not result from any "protected, concerted activity" is limited to a determination whether the commission acted invalidly in dismissing the charge. *Alexander* v. *Labor Relations Comm'n*, 404 Mass. 1005, 1006 (1989). "We may not disturb the commission's decision unless 'the substantial rights of any party have been prejudiced' for one of the reasons set forth in G. L. c. 30A, § 14 (7). We generally accord considerable deference to the commission's disposition of a charge." *Boston Police Superior Officers Fed'n* v. *Labor Relations Comm'n*, 410 Mass. 890, 892 (1991).

---

or coercion." Section 10 (*a*) (1)-(3) make it a prohibited practice for public employers to "[i]nterfere, restrain, or coerce any employee in the exercise of any right guaranteed under this chapter; . . . [d]ominate, interfere, or assist in the formation, existence, or administration of any employee organization; [or] [d]iscriminate in regard to . . . any term or condition of employment to encourage or discourage membership in any employee organization."

[4]The union, in its discussion of c. 150E, appears to argue that something more is required of the commission. In its brief, the union argues that "[s]trong or offending language is irrelevant and secondary when faced with the need to protect the union's right to communicate freely without threat of harassment or intimidation. By permitting the public employer to discipline those union officials who dare to speak out in language which . . . is constitutionally protected, the Commission fosters a chilling impact in the exercise by unions of legitimate efforts to communicate with their members." As we noted above, the commission's task is not to measure "lawful, concerted activity" against the protection of the First Amendment.

The commission's decision that Abbott's message did not constitute "protected activity" was within the commission's discretion under G. L. c. 150E. The commission balanced the union's right to communicate to its members with the interest of the employer to be free from "egregious, insubordinate, or profane remarks which disrupt the employer's business or demean workers or supervisors." *City of Boston*, 6 M.L.C. 1096, 1097 (1979). See *Crown Cent. Petroleum Corp.* v. *NLRB*, 430 F.2d 724, 729 (5th Cir. 1970): "An employee may not act with impunity even though he is engaged in protected activity. His rights . . . must be balanced against the employer's right to maintain order in his business by punishing acts of insubordination."

The commission relied heavily on the fact that Abbott's comments were not made impulsively during the heat of a dispute, at a collective bargaining session, or during a grievance procedure. Rather, Abbott sat at a computer terminal, and, with time to reflect on his statements, transmitted demeaning comments over the police department's computer network to fellow employees, urging them to "make everyone aware that those people . . . are pigs, cheats, liars, whatever!!!!"

The commission did not abuse its discretion in concluding that the union had not established probable cause to believe that the town suspended Abbott for his protected activity rather than for his insubordinate remarks.

*Decision of the Labor Relations Commission affirmed.*