NATIONAL ASSOCIATION OF GOVERNMENT EMPLOYEES
*vs.* LABOR RELATIONS COMMISSION.

No. 94-P-354.

Suffolk. February 7, 1995. - May 26, 1995.

Present: BROWN, KASS, & GREENBERG, JJ.

*Labor,* Fair representation by union, Action against labor union. *Contract,* Collective bargaining contract. *Labor Relations Commission.*

The Labor Relations Commission's determination that a union had violated its duty of fair representation to a union member was supported by substantial evidence. [612-614]

A frivolous appeal warranted this court's award of just damages to the appellee pursuant to the provisions of Mass.R.A.P. 25. [614]

APPEAL from a decision of the Labor Relations Commission.

*Mark J. Dalton* for the plaintiff.

*Tammy Brynie* for the defendant.

KASS, J. After an evidentiary hearing and findings by the hearing examiner, the Labor Relations Commission (LRC) decided that National Association of Government Employees (NAGE) had violated its duty of fair representation to one of its members, Herbert Moshkovitz. The LRC ordered a variety of remedies to compensate Moshkovitz and, as well, ordered NAGE to post ostentatiously a notice confessing its errors and announcing that it would sin no more — at least not in the same way. NAGE has appealed. See G. L. c. 150E, § 11, par. 4. We affirm.

Moshkovitz, a tax examiner in the Department of Revenue (DOR), had been laid off in the spring of 1991, a fate he shared with eighty-seven other DOR employees. He was one of thirteen tax examiners being laid off out of twenty-three who had an original "hire date" with DOR of July 10, 1988.

The collective bargaining agreement between NAGE and DOR contained machinery allowing discharged employees with the requisite skills to bump those with less seniority but contained no provision for retention priorities among those with equal seniority. By letters dated March 25, 1991, and March 29, 1991, Moshkovitz notifed NAGE of two grievances and a request to exercise certain "bump and transfer" rights. One of the two grievances protested the promotion of two employees by DOR without posting the promotion opportunity, as required by the collective bargaining agreement. The point here was that, had Moshkovitz achieved the higher position, he might have escaped the reduction in force in tax examiners. Moshkovitz's second grievance protested that his layoff had been determined in an unfairly discriminatory fashion considering his attendance, evaluations, and "other variables." Those notifications of grievance and request to the union anticipated the announced layoff. The termination ax in fact fell on Moshkovitz on April 5, 1991.

On May 10, 1991, Moshkovitz wrote to John Bent, the NAGE representative for his bargaining unit, that he had yet to hear from NAGE about his grievances and request. He added, "I am writing you with full expectation that the union will be representing me, and any others who may have similar concerns." NAGE never responded to Moshkovitz, and, indeed, NAGE concedes that it never investigated or evaluated his grievances, letters, or requests for representation.

NAGE's defense before the LRC was that Moshkovitz had failed to follow the correct procedure for filing a grievance and that he had no meritorious grievance. The LRC found that Moshkovitz's notices of grievances were sent registered mail in timely fashion to all persons required to receive them at NAGE and DOR. NAGE does not elaborate why it thought Moshkovitz's grievance letters inadequate. In its brief before us, NAGE makes invidious comparisons between those letters and grievances filed on NAGE grievance complaint forms. We are not persuaded by an argument that Moshkovitz's grievances stand or fall on whether he wrote to

the union on the right letterhead. As to the merits of his grievances, the LRC determined that Moshkovitz had an arguable complaint on both the issue of promotion and the issue of how DOR went about selecting who was to be laid off.

A union has a duty to represent its members fairly in connection with issues that arise under a collective bargaining unit. *Vaca* v. *Sipes*, 386 U.S. 171, 177 (1967). *Switzer* v. *Labor Relations Commn.*, 36 Mass. App. Ct. 565, 567 (1994). In the discharge of that duty, there is room for discretion, consideration of the interests of the over-all union membership in relation to that of the individual aggrieved member, and even for honest mistake or negligence about whether a grievance ought to be pressed. That fairly generous scope for inaction is exceeded when the union's conduct is arbitrary, discriminatory, in bad faith, or (and this may be a variant on arbitrary conduct) grossly inattentive or grossly negligent. *Graham* v. *Quincy Food Serv. Employees Assn. & Hosp., Library & Pub. Employees Union*, 407 Mass. 601, 606 (1990). *Trinque* v. *Mount Wachusett Community College Faculty Assn.*, 14 Mass. App. Ct. 191, 197-202 (1982). *Baker* v. *Local 2977, State Council 93, Am. Fedn. of State, County & Municipal Employees*, 25 Mass. App. Ct. 439, 441-442 (1988). *Pattison* v. *Labor Relations Commn.*, 30 Mass. App. Ct. 9, 16 (1991).

NAGE, the LRC found, had done worse than decline consciously to represent Moshkovitz in his grievances; it simply ignored him. The union made no effort to advise Moshkovitz about how to proceed with his grievances after, by reason of his lay-off, he had ceased being a union steward. The LRC further found that an arbitrator might reasonably have found Moshkovitz entitled to a remedy on the basis of the two grievances he had alleged. Reviewing courts generally accord substantial deference to determinations by the LRC, assuming, as here, settled legal standards, that a party has committed a prohibited labor practice. *Quincy City Hosp.* v. *Labor Relations Commn.*, 400 Mass. 745, 749 (1987). *Boston Police Superior Officers Fedn.* v. *Labor Relations Commn.*, 410 Mass. 890, 892 (1991). *Pattison* v. *Labor Relations*

*Commn.*, 30 Mass. App. Ct. at 16. *Felton* v. *Labor Relations Commn.*, 33 Mass. App. Ct. 926, 927 (1992). We are not disposed to discuss cavils of the union such as whether Moshkovitz improperly combined Step 1 and Step 2 grievances in one document. There was substantial evidence to support the LRC's underlying point that Moshkovitz properly processed his claim up to the time he was laid off and that NAGE failed entirely to continue the process thereafter. In light of NAGE's undertaking to represent its members and avowed skill in so doing, the defense of improper processing by its member is redolent of afterthought, rather than a rational policy related to legitimate union purpose. See *Pattison* v. *Labor Relations Commn.*, 30 Mass. App. Ct. at 16-17 (union's justification of technical processing failures by employee rejected). Similarly an apparent afterthought is NAGE's argument that it would be burdensome to process grievances when many members have, as here, been laid off. Apart from the remarkable suggestion that grievances may be ignored because it is hard work to process them, NAGE has conceded that it simply neglected Moshkovitz's grievance. The LRC was warranted, on the substantial evidence, in concluding that NAGE had violated its fair duty of representation to Moshkovitz by failing to process his grievance.

Once the LRC had made its findings and rulings, there was no reasonable expectation of reversal by an appellate court. The appeal was frivolous. Acting under Mass.R.A.P. 25, as amended, 376 Mass. 949 (1979), we order that NAGE pay to the LRC just damages of $2,000, and that its counsel on appeal pay to the LRC just damages of $1,000. See *Allen* v. *Batchelder*, 17 Mass. App. Ct. 453, 457-458 (1984).

*Decision of Labor Relations Commission affirmed.*