RAUL GONCALVES vs. LABOR RELATIONS COMMISSION.

No. 96-P-591.

Suffolk. April 10, 1997. - August 1, 1997.

Present: WARNER, C.J., SMITH, & LAURENCE, JJ.

Labor, Fair representation by union, Grievance procedure. Administrative Law, Substantial evidence. Labor Relations Commission.

The record of a proceeding before the Labor Relations Commission demonstrating a union's failure to follow its own policies governing the processing of a member's grievance, its failure to inform the member of the status of his grievance and its failure to respond to the member's attorney's requests for information mandated a finding that the union violated its duty of fair representation, and a decision of the commission to the contrary was not supported by substantial evidence. [295-297]

A decision of the Labor Relations Commission was reversed where it was based on an error of law. [297-298]

A prohibited practice matter was remanded to the Labor Relations Commission for further findings with respect to damages and for a determination of the appropriate remedy for a union's violation of its duty of fair representation. [298-299]

APPEAL from a decision of the Labor Relations Commission.

James T. Masteralexis for Raul Goncalves.

John B. Cochran for Labor Relations Commission.

SMITH, J. On December 7, 1992, Raul Goncalves filed a prohibited practice charge with the Labor Relations Commission (commission) against his union, the American Federation of State, County and Municipal Employees, Council 93, Local 3168 (union). Goncalves alleged that the union had violated G. L. c. 150E, § 10(b)(1), by failing and refusing to investigate, adjust, and process a grievance filed on his behalf, and by failing and refusing to communicate with him concerning his grievance.

On July 12, 1993, following an investigation, the commission issued its own complaint of a prohibited practice against the

union, claiming that the union violated its duty of fair representation toward Goncalves by not responding to his requests for information concerning the status of his grievance and by failing to discuss with Goncalves the merits or status of his grievance or otherwise take any action to assist him.

An evidentiary hearing was conducted before an administrative law judge who, in accordance with 456 Code Mass. Regs. § 13.02 (2) (1993), issued recommended findings of fact which were adopted by the commission. Based on those facts, the commission ruled that the union had not violated its duty of fair representation and dismissed the case. Goncalves has appealed from that decision. He claims that the commission's decision was arbitrary, capricious, an abuse of discretion, and not warranted by the facts, and that the commission erred as matter of law.

We summarize the commission's findings of fact. In 1987, Goncalves was hired by Middlesex County Hospital.[1] As an employee of Middlesex County (county), Goncalves was a member of the union, which was a party to a collective bargaining agreement with the county. The agreement contained a provision which gave laid off union employees the "right to bump a bargaining unit[,] employee, in equal or lower job grade within the bargaining unit provided [the laid off union employee] is as qualified to do the available work in the unit." Article VI *Seniority*, Section 6 of the collective bargaining agreement.

On February 20, 1992, Goncalves was notified by the county that due to financial constraints, his position as a patient revenue and accounts analyst was being eliminated and that he would be laid off effective February 26, 1992. Because Goncalves was aware that other bargaining unit employees with less seniority were not being laid off, he met with the director of personnel, Joanne Moore, to inform her that he wished to exercise his "bumping rights" under the agreement to secure a job as a payroll clerk at the hospital. On March 5, 1992, after Goncalves had made a written request, Moore notified Goncalves that he would not be allowed to "bump" into a payroll clerk position.

On March 9, 1992, Goncalves contacted the union vice-president, John Boland, seeking his assistance in processing his

---

[1] Goncalves worked in patient accounts from 1987 to approximately 1990, and he worked as a patient revenue and accounts analyst from 1990 until his layoff in 1992.

grievance.[2] The union did not have a full-time staff or an office on the hospital's premises. Rather, the union's business was conducted out of the security office where Boland worked. Boland generally handled grievances through the first three steps of the grievance procedure. A staff member of the union handled all arbitrations. Boland had been personally involved in approximately twenty grievance matters which were resolved, for the most part, to the union's satisfaction.

When Goncalves approached Boland for assistance, Boland told him that it could take up to two years to resolve the matter, should it proceed to arbitration. Goncalves told Boland that he intended to hire a lawyer to expedite the process. Boland became upset with Goncalves because he understood Goncalves's statement as a threat to sue the union. Tension dissipated before the meeting ended and they worked jointly to complete the grievance fact sheet which was hand delivered to Moore at the

---

[2]The commission noted that in the collective bargaining agreement Steps 1, 2 and 3 of the grievance procedure provide:

"*Step One*: When an alleged Grievance arises, a representative of the Union and/or the aggrieved employee shall within ten (10) working days of the Grievance present the Grievance in writing to the appropriate Department Head who shall render a decision in writing within five (5) working days to the Union Representative and/or employees unless both parties agree in writing to an extension of time.

"*Step Two*: If the Grievance remains unadjusted, it shall be presented in writing by the representative acting for the Union itself or an aggrieved employee, with or without an employee, to the Personnel Director within five (5) working days after the written decision of the appropriate Department Head and/or their designees. The Personnel Director shall confer within ten (10) working days after receipt of such Grievance and shall render a decision within five (5) working days.

"*Step Three*: If the Grievance remains unadjusted, it shall be presented in writing to the Board of Commissioners within seven (7) working days after receipt of the written decision of the Personnel Director. The Board of Commissioners shall confer within twenty (20) working days. The Commissioners' decision shall be final subject to grievance procedures in Step Four."

The procedure further provides:

"In the event the Union fails to process a Grievance to the next Step of the Grievance Procedure, the Grievance outcome shall be deemed favorable to the Employer."

hospital's personnel office. Moore rejected the grievance because it was not on the proper form. However, she granted Boland's request for an extension of time to file the official form. On March 18, 1992, Boland and Goncalves completed the official union grievance form, and it was given to Moore. The form contained the following language located just above the date and Goncalves's signature:

"I authorize the A.F.S.C.M.E. Local *3168* as my representative to act for me in the disposition of this grievance."

On either March 9, 1992 or March 18, 1992, the union requested and received a copy of the county's job description for the title of payroll clerk. After reviewing the job description, Boland told Moore that if Goncalves was qualified for the position of payroll clerk, he should get the job. Moore contacted Goncalves and asked him to come in for an interview. A union representative, not Boland, attended the interview. At the interview, Goncalves stated that although he never performed payroll work in this country, he did have experience in payroll preparation in the Azores. He stated that if he was given the requisite codes, he was capable of learning the hospital's payroll system in two or three days. Goncalves also reiterated his intent to pursue his bumping rights.

A short time after this interview, the union received a letter dated March 25, 1992, from Goncalves's attorney, Paul Kelly. The letter, which was directed to union president Barbara Grinrod, requested that both Attorney Kelly and Goncalves "be notified of the progress of the grievance and [be] provided copies of the responses of management as the grievance progresses." On April 6, 1992, the county responded to Goncalves's grievance by sending a letter to Boland, denying the grievance on the ground that Goncalves was "not capable of performing the duties of the payroll clerk without further training." After receipt of the denial of Goncalves's grievance, Boland and Grinrod decided not to pursue the grievance further because the union believed that once Goncalves had retained an attorney, it had no role to play in the grievance process. The union did not notify Goncalves or his attorney of either the hospital's denial of his grievance or the union's decision to

refrain from pursuing the matter further.[3] On September 30, 1992, after receiving no response to his March 25th inquiry, Kelly again wrote to Grinrod requesting information about the status of Goncalves's grievance. Again the union did not respond and it was not until January, 1994, just prior to the commission's hearing in this case, that the union provided Goncalves, through his attorney, with the county's April 6, 1992, letter denying Goncalves's grievance.

It was the union's policy to secure a written waiver from individual grievants who no longer wanted the union to represent them and would rather retain their own legal services or other representation. In the fall of 1992, after the union decided not to pursue Goncalves's grievance, Boland became aware of the union's policy and he was also told that in the absence of a written waiver, it was the union's responsibility to continue to process the grievance. The union never asked for, nor did it obtain, a written waiver from Goncalves.

At the hearing before the commission, the parties stipulated that Goncalves's grievance was meritorious and not clearly frivolous, and that Goncalves was qualified, and is qualified, to perform the job duties and responsibilities of the payroll clerk position.

"A union has a duty to represent its members fairly in connection with issues that arise under a collective bargaining unit." *National Assn. of Govt. Employees* v. *Labor Relations Commn.*, 38 Mass. App. Ct. 611, 613 (1995), citing *Vaca* v. *Sipes*, 386 U.S. 171, 177 (1967). "[A] union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion." *Vaca* v. *Sipes*, 386 U.S. at 191. "Unions are permitted 'a wide range of reasonableness' in representing the often-conflicting interests of employees; hence, unions are vested with considerable discretion not to pursue a grievance, as long as their actions are 'not improperly motivated, arbitrary, perfunctory or demonstrative of inexcusable neglect.' " *Graham* v.

---

[3]The commission found that "in or about April 1992," Moore informed Goncalves that his grievance was denied. The commission further found that after his grievance was denied, Goncalves visited the hospital premises three or four times per month. Goncalves never asked Boland about the status of his grievance and Boland never informed Goncalves of the denial of his grievance or the union's decision not to pursue his grievance further.

The commission noted that Goncalves testified that he did not inquire about the status of his grievance because Boland had previously told him that it could take up to two years to resolve the grievance.

*Quincy Food Serv. Employees Assn. & Hosp., Library & Pub. Employees Union*, 407 Mass. 601, 606 (1990), quoting from *Baker* v. *Local 2977, State Council 93, Am. Fedn. of State, County & Mun. Employees*, 25 Mass. App. Ct. 439, 441 (1988). "Although ordinary negligence may not amount to a denial of fair representation, lack of a rational basis for a union decision and egregious unfairness or reckless omissions or disregard for an individual employee's rights may have that effect." *Trinque* v. *Mount Wachusett Community College Faculty Assn.*, 14 Mass. App. Ct. 191, 199 (1982).

Here, the commission ruled that "[a]lthough Goncalves's attorney only requested in his [March 25th] letter that he and Goncalves be kept informed of the status of the grievance, [4] we decline to find that Boland's understanding of the [u]nion's obligations once a grievant retained an attorney constitutes gross or inexcusable negligence." Rather, the commission ruled that "[a]bsent any evidence of unlawful motivation or bad faith, we find that the [u]nion's failure to continue to process Goncalves's grievance must be viewed as an honest mistake of judgment by a local union officer," i.e., Boland. The commission added, "[t]o find otherwise would require that employees who serve as shop stewards or run for union office possess a level of legal expertise not required by the Law," citing *Baker* v. *Local 2977, State Council 93, Am. Fedn. of State, County & Mun. Employees*, 25 Mass. App. Ct. at 442 (1988), in support of its ruling.

In regard to the union's failure to inform Goncalves of the status of his grievance and its failure to respond to Goncalves's attorney's letters, the commission found that "[t]he credited evidence discloses that Boland understood that [u]nion [p]resident Grinrod attempted to reach Goncalves to inform him of the status of his grievance. Although the facts do not disclose what steps, if any, the [u]nion took to reach Goncalves, we find it reasonable to infer that the [u]nion did not simply choose to ignore Goncalves." Thus, the commission ruled that "[e]ven ac-

---

[4]Both of Goncalves's attorney's letters (March 25th and September 30th) only requested a status report on the progress of Goncalves's grievance through the grievance procedure. There is nothing in the letters that would indicate that Goncalves's attorney intended to represent Goncalves in the grievance procedure.

In fact, there was no evidence that Boland, Grinrod, or any other union representative was told that Goncalves's lawyer planned to represent Goncalves during the grievance procedure.

cepting that the [u]nion's conduct was negligent, absent any evidence that the [u]nion's conduct was unlawfully motivated or otherwise done in total disregard for Goncalves's claim, the record does not justify a finding that the [u]nion's conduct was perfunctory or reflective of inexcusable neglect," and concluded that the union did not violate its duty of fair representation.

On review, we are "limited to an examination of the record to ascertain if the findings are supported by substantial evidence." *Babcock* v. *Labor Relations Commn.*, 14 Mass. App. Ct. 650, 652 (1982). "Substantial evidence" is evidence that "a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1(6), as inserted by St. 1954, c. 681, § 1.

"In order to determine if an agency's decision is supported by substantial evidence, one must examine the entire administrative record and take into account whatever detracts from its weight." *Pyfrom* v. *Commissioner of Pub. Welfare*, 39 Mass. App. Ct. 621, 624-625 (1996). While "we may not treat the proceeding as a trial de novo or displace the commission's choice between two conflicting views, even though we might justifiably have made a different choice had the matter been before us in the first instance," *Southern Worcester County Regional Vocational Sch. Dist.* v. *Labor Relations Commn.*, 377 Mass. 897, 903 (1979), "[a]n agency's determination may be set aside if 'the evidence . . . points to an overwhelming probability of the contrary.' " *Pyfrom* v. *Commissioner of Pub. Welfare*, 39 Mass. App. Ct. at 625, quoting from *New Boston Garden Corp.* v. *Assessors of Boston*, 383 Mass. 456, 466 (1981).

1. *Lack of substantial evidence to support commission's findings.* In reaching its decision, the commission ruled that in order to determine whether the union violated its duty of fair representation, "the [u]nion's conduct must be assessed in light of the facts known to the [u]nion at the time it decided not to continue to process Goncalves's grievance." We agree.

The commission's decision that the *union* did not violate its duty of fair representation was based entirely upon its assessment of the extent of *Boland's* knowledge in April of 1992 regarding the union's obligations toward grievants who retain counsel. By focusing solely upon *Boland*, the commission ignored, and indeed contradicted, its own finding that the union's decision was a *joint* decision by Grinrod and Boland. Thus, in order to make a proper assessment of the union's

conduct in light of the facts known to the *union* in April of 1992, the commission was obligated to consider Grinrod's participation in making the decision to refrain from processing Goncalves's grievance, and it was required to make findings regarding the facts known to her at that time, including her knowledge of the union's policy toward grievants who retain attorneys. The commission made no findings that Grinrod as the president of the union was, like Boland, unaware of or even "honestly mistaken" about the union's policy requiring it to obtain an executed waiver of representation from the grievant before refraining from taking further action on the grievance. Therefore, the commission committed error when it ruled that the *union* did not violate its duty of fair representation by refraining from pursuing Goncalves's grievance further.

Also, there is a lack of substantial evidence to support the commission's decision that the *union* did not violate its duty of fair representation by failing to notify Goncalves of the union's decision not to pursue his grievance further.

The commission based that ruling on its "reasonable inference" that "the [u]nion did not simply choose to ignore Goncalves." An "inference is simply a generalization based on the logical connection between two facts, so that the existence of fact A makes the existence of fact B more or less probable." Liacos, Massachusetts Evidence § 5.8.6 (6th ed. 1994). Here, the commission acknowledged that "the facts do not disclose what steps, if any, the [u]nion took to reach Goncalves," and "the [u]nion did not respond with any information either to Goncalves or his attorney," even though the union acknowledged receiving both of Goncalves's attorney's inquiries. Thus, there were no facts upon which the commission could draw an inference that the "[u]nion did not simply choose to ignore Goncalves"; rather, "the evidence . . . points to an overwhelming probability of the contrary." *Pyfrom* v. *Commissioner of Pub. Welfare*, 39 Mass. App. Ct. at 625, quoting from *New Boston Garden Corp* v. *Assessors of Boston*, 383 Mass. at 466.

Our decision in *National Assoc. of Govt. Employees* v. *Labor Relations Commn.*, 38 Mass. App. Ct. 611 (1995), is relevant. There, the commission decided, among other things, that a union had violated its duty of fair representation to a member by failing to process his grievances arising from a layoff and by failing to respond to his inquiries. The commission found that the union "had done worse than decline consciously to represent

[the union member] in his grievances; it simply ignored him." *Id.* at 613. The court held that there was substantial evidence to support the commission's decision and noted that the union member's grievance could be found to be meritorious. *Id.* at 613-614. In contrast, here there was no substantial evidence to support the commission's decision.

Moreover, the union's failure to inform Goncalves of its decision not to pursue his grievance further demonstrates a reckless disregard for Goncalves's rights, especially in light of the time-sensitive nature of the grievance procedure, see note 2, *supra*, and its provision that if a grievance is denied, failure to process it to the next step will result in a decision favorable to the employer.

In sum, the union's failure to follow its own policies governing its processing of Goncalves's grievance, its failure to inform him of the status of his grievance, and its failure to respond to his attorney's requests for information constitute nothing less than "grossly inattentive or grossly negligent" conduct, thereby mandating a finding that the union violated its duty of fair representation in the present case. *National Assn. of Govt. Employees* v. *Labor Relations Commn.*, 38 Mass. App. Ct. at 613. The commission's decision to the contrary was not based on substantial evidence.

2. *Error of law.* The commission's decision also must be reversed because it is based on an error of law. The commission cites this court's decision in *Baker* v. *Local 2977, State Council 93, Am. Fedn. of State, County & Mun. Employees*, 25 Mass. App. Ct. 439, 441-442 (1988), as the basis for its ruling that "[a]bsent any evidence of unlawful motivation or bad faith, . . . the [u]nion's failure to continue to process Goncalves's grievance must be viewed as an honest mistake of judgment by a local union officer" because "[t]o find otherwise would require that employees who serve as shop stewards or run for union office possess a level of legal expertise not required by the Law."[5]

In this case, however, there was no need for the union

---

[5]The commission apparently based its ruling on the following language that appears in the *Baker* decision, at 441-442:

"[I]t is not enough for the employee to show that his grievance was 'meritorious,' or that the union made a 'judgmental error,' or employed reasoning which, as an original matter, would not satisfy an expert Labor Relations Commission or, by extension, a judge. That a union did not reach the correct interpretation of a collective bargaining agree-

president or Boland to make any complex legal interpretations, exhibit reasoning akin to that of the commission or of a judge, or, in the commission's analogy, "seek legal or professional labor relations advice" regarding its method of handling Goncalves's grievance. All that was required was that the union president or Boland be familiar with the union's policy toward grievants who have retained their own lawyers and that they continue to process their grievances, or at least communicate a decision not to do so, unless and until a written waiver is obtained. Nothing in *Baker* suggests that a union is shielded from its responsibility to its own members because union officials are not familiar with the union's policies, especially where the grievant has a meritorious claim as Goncalves did in this matter.[6]

3. *Remedy*. As a remedy, Goncalves requests that he be made "whole in all respects by [an order that] the union . . . compensate him in the amount of money that he would have earned if he was allowed to use his bumping rights to acquire the payroll clerk position," attorney's fees, costs, and "any other relief this court deems appropriate."[7] See *Leahy* v. *Local 1526, Am. Fedn. of State, County & Mun. Employees*, 399 Mass. 341, 353-354 (1987) ("As in a legal malpractice action, the union is liable for what the plaintiff would have received had the union fulfilled its duty"); *National Assn. of Govt. Employees* v. *Labor Relations Commn.*, 38 Mass. App. Ct. at 611. Because

---

ment — was 'inartful, unskillful, or erroneous' in contract analysis — would not endow the grieving employee with a right to correction at the hands of a court." (Footnotes omitted.)

[6]Our decision in *Switzer* v. *Labor Relations Commn.*, 36 Mass. App. Ct. 565 (1994), is not to the contrary. In that matter, there was a claim that the union violated its own constitution by failing to submit the terms of a settlement agreement to the union membership. The court held that the commission correctly dismissed the claim where, contrary to the present case, there was no claim that the terms of the settlement agreement constituted unfair, arbitrary, discriminatory, or bad faith treatment of the plaintiff.

[7]We note that " '[n]either an employer nor a union is an indispensable party in an action against the other by an employee-union member when the action against the employer is based on a violation of the terms of the collective bargaining agreement and the action against the union is based on the statutory duty of fair representation.' " *Graham* v. *Quincy Food Serv. Employees Assn. & Hosp., Library & Pub. Employees Union*, 407 Mass. 601, 614 (1990), quoting from *Kaiser* v. *Local No. 83, Intl. Bhd. of Teamsters*, 577 F.2d 642, 644 (9th Cir. 1978).

there is no evidence in the record to show what amount Goncalves would have been paid if he had successfully pursued his grievance, and because the commission is in a better position to determine that amount and whether the union should be ordered to perform additional acts such as posting a notice "confessing its errors and announcing it would sin no more," *ibid.*, the case is hereby remanded to the commission for further findings relative to the issue of damages and to fashion a remedy for Goncalves in accordance with this decision.

*So ordered.*