JOSEPH R. ANDERSON & others[1] *vs.* COMMONWEALTH EMPLOYMENT RELATIONS BOARD[2] & another.[3] No. 07-P-1286. January 23, 2009. *Civil Service,* Fire fighters. *Fire Fighter. Labor,* Fair representation by union.

Plaintiffs, a number of retired members of the International Association of Firefighters, Local 718, AFL-CIO (union), appeal from a final order of the Commonwealth Employment Relations Board (board) dismissing their charges that the union committed a breach of its duty of fair representation in violation of G. L. c. 150E, § 10(*b*)(1). We affirm.

1. *Background.* The plaintiffs are more than ninety retired union members who filed a claim with the board alleging that the union committed a breach of its duty of fair representation in violation of G. L. c. 150E, § 10(*b*)(1),[4] by

---

[1]Over ninety other retired Boston fire fighters.

[2]Formerly the Labor Relations Commission.

[3]Boston Firefighters Local 718, International Association of Firefighters, AFL-CIO, CLC, intervener.

[4]General Laws c. 150E, § 10(*b*)(1), inserted by St. 1974, c. 589, § 2, makes it a prohibited practice for a union to "[i]nterfere, restrain, or coerce any employer or

negotiating a collective bargaining agreement (CBA) with the following sick leave provision:

> "[T]he City agrees that on a one-time basis, for those employees . . . on the Department payroll as of September 1, 2001, he/she shall receive seventy-two (72) hours of sick time credited to his/her sick leave bank for each calendar year or fractions thereof . . . of actual service, commencing on his/her date of appointment to the Department.

> "Notwithstanding the effective date of this Article, the Sick Leave Redemption at Retirement or Death Provision shall be effective September 1, 2001."

The plaintiffs all retired before September 1, 2001. They contend that the quoted provision disadvantages them because they, unlike active duty firefighters, cannot receive the extra seventy-two hours of sick leave. The plaintiffs claim that the provision discriminates against them on the basis of age or disability and that the union violated its duty of fair representation in negotiating it.[5]

The board dismissed the plaintiffs' charge without a hearing, citing lack of probable cause to believe that the union violated G. L. c. 150E, § 10($b$)(1).[6] The board concluded that the sick leave provision did not, without more, warrant the inference that the union had improper discriminatory motivations in negotiating the CBA, especially in light of other CBA provisions that benefited the plaintiffs. See part 2, *infra*. The board also concluded that it had no jurisdiction over matters of internal union governance like those contained in the union's constitution. After the plaintiffs filed a request for reconsideration, the board affirmed the dismissal.[7] The plaintiffs appeal from that final order, claiming that the board's decision to dismiss their claims lacks substantial evidentiary support.

---

employee in the exercise of any right guaranteed under this chapter." General Laws c. 150E, § 5, inserted by St. 1973, c. 1078, § 2, states that an "exclusive representative . . . shall be responsible for representing the interests of all such employees without discrimination." Even if the "statute did not provide for the duty of fair representation, the courts would infer it as a constitutional requirement." *Leahy* v. *Local 1526, Am. Fedn. of State, County, & Mun. Employees*, 399 Mass. 341, 348 (1987).

[5]The plaintiffs further argue that the union's constitution, which provided that retired members could maintain active membership in the union but could not vote on collective bargaining agreements, likewise violates the duty of fair representation to the extent that it denied them the right to vote. The board correctly concluded that it had no jurisdiction to address the plaintiffs' voting claim, a purely internal matter. See *Switzer* v. *Labor Relations Commn.*, 36 Mass. App. Ct. 565, 567-568 (1994).

[6]The board did not address the question whether the union owed the plaintiffs a duty of fair representation.

[7]The plaintiffs tried to bolster their argument by claiming that the union encouraged one member to delay retirement until after the sick leave cutoff date, yet did not give other members the same "inside information." The board did not consider this claim due to a policy not to consider information raised for the first time in a request for reconsideration. We, too, decline to consider it. See *McCormick* v. *Labor Relations Commn.*, 412 Mass. 164, 170 (1992) (holding that a party "cannot raise on appeal arguments that she failed to raise before the commission"). Even if we were to consider it, we would agree with the board that one case of delayed retirement does not suggest discriminatory intent on the union's part.

2. *Discussion.* a. *Standard of review.* Pursuant to G. L. c. 30A, § 14(7)(E), as appearing in St. 1973, c. 1114, § 3, we may set aside the board's decision to dismiss the plaintiffs' claim only if we find it "[u]nsupported by substantial evidence." See *Goncalves* v. *Labor Relations Commn.,* 43 Mass. App. Ct. 289, 295 (1997). To be "substantial," evidence must be of a character that "a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1(6). We "examine the entire administrative record," *Pyfrom* v. *Commissioner of Pub. Welfare,* 39 Mass. App. Ct. 621, 624 (1996), giving "deference to the [board's] specialized knowledge and expertise, and to its interpretation of the applicable statutory provisions." *Worcester* v. *Labor Relations Commn.,* 438 Mass. 177, 180 (2002). See *Labor Relations Commn.* v. *University Hosp., Inc.,* 359 Mass. 516, 521 (1971) (court may not treat an appeal of the commission's decision "as a trial de novo on the record which was before the administrative board"). We will only set the board's decision aside if the record "points to an overwhelming probability of the contrary." *New Boston Garden Corp.* v. *Assessors of Boston,* 383 Mass. 456, 466 (1981), quoting from Jaffee, Judicial Control of Administration Action 598 (1965). The record here does not do that.

b. *The board properly dismissed for lack of probable cause.* "A union has a duty to represent its members fairly in connection with issues that arise under a collective bargaining unit." *National Assn. of Govt. Employees* v. *Labor Relations Commn.,* 38 Mass. App. Ct. 611, 613 (1995). See *Vaca* v. *Sipes,* 386 U.S. 171, 177 (1967). This duty does not require a union to treat each member identically. A union has "room for discretion, consideration of the interests of the over-all union membership in relation to that of the individual aggrieved member, and even for honest mistake . . . . That fairly generous scope for inaction is exceeded when the union's conduct is arbitrary, discriminatory, in bad faith, or . . . grossly negligent." *National Assn. of Govt. Employees* v. *Labor Relations Commn., supra.*

As the board concluded, the plaintiffs provided no evidence that the union "did not act primarily for the collective good of all bargaining unit members" in negotiating the CBA or that it "acted in a manner that was arbitrary, perfunctory or demonstrative of inexcusable neglect." The board was also correct to point out that a union may treat different classes of employees differently with respect to wages without violating G. L. c. 150E, § 10(b)(1), absent evidence of unlawful motivation. *Alliance, AFSCME SEIU,* 6 M.L.C. 1170, 1172 (1979).

The plaintiffs nevertheless claim that they satisfied their burden with circumstantial evidence. Cf. *Sullivan* v. *Liberty Mut. Ins. Co.,* 444 Mass. 34, 38 (2005) (plaintiff in an employment discrimination case may establish discriminatory intent through indirect or circumstantial evidence). Specifically, they contend that "a cut-off date by which such a large number of elderly and infirm employees were denied benefits received by the remainder of the bargaining unit" gives rise to a reasonable inference that the union intended to discriminate against them based on age or disability during the negotiation process. This argument fails because active duty members of the union are not necessarily younger or more able-bodied than retired members. It is uncontested that because twenty years of service triggers retirement eligibility, voluntary retirees could range in age from thirty-eight to sixty-five. Disability retirees, of course, could be much younger.

Furthermore, the sick leave provision makes an entirely rational distinction between retired and active-duty members.[8] Active-duty members can use additional sick leave to avoid using vacation time in the event of illness. For the appellants, on the other hand, the "sick-leave" provision would provide only a cash benefit. The board could permissibly conclude that the union did not commit a breach of its duty of fair representation by obtaining for active members what amounted to added insurance against loss of a benefit, vacation time, that retired members simply did not have.

Finally, while the union may not have obtained every benefit the plaintiffs would have liked, it did act reasonably in negotiating the CBA for all its members and, as the board pointed out, gained for the plaintiffs an approximately four percent retroactive pay increase and the consequential upward adjustment of their retirement benefits. In short, nothing in the record suggests that the union acted in an unfair, arbitrary, discriminatory, or otherwise prohibited manner. Lacking such a suggestion, we cannot find that the board's decision was unsupported by substantial evidence.

> *Order denying charge affirmed.*
> *Order denying request for review affirmed.*

*Michael J. Slitt* for the plaintiffs.
*Paul T. Hynes* for the intervener.
*Cynthia A. Spahl* for the defendant.

---

[8]Cf. *Trinque* v. *Mount Wachusett Community College Faculty Assn.*, 14 Mass. App. Ct. 191, 199 (1982) ("[L]ack of a rational basis for a union decision and egregious unfairness or reckless omissions or disregard for an individual employee's rights" may amount to a denial of fair representation).