## MASSACHUSETTS NURSES ASSOCIATION *vs.* COMMONWEALTH EMPLOYMENT RELATIONS BOARD & another.[1]

No. 09-P-1147.

Suffolk. March 9, 2010. - June 25, 2010.

Present: DUFFLY, SMITH, & COHEN, JJ.

*Commonwealth Employment Relations Board. Labor,* Unfair labor practice, Judicial review. *Administrative Law,* Judicial review.

The Commonwealth Employment Relations Board (board) erred in dismissing without an evidentiary hearing the plaintiff union's prohibited practice charge against the employer hospital for ordering hospital employees to remove their union logo-emblazoned T-shirts, where the record did not support the board's determination that, although generally the wearing of union insignia constitutes lawful, concerted activity protected by G. L. c. 150E, § 10(*a*)(1), special circumstances justified the employer's action. [131-134]

APPEAL from a decision of the Commonwealth Employment Relations Board.

*Mark A. Hickernell* for the plaintiff.

*David Hadas,* Assistant Attorney General, for the intervener.

*Maydad D. Cohen* for Commonwealth Employment Relations Board.

SMITH, J. The plaintiff, Massachusetts Nurses Association (union), filed a prohibited practice charge against the employer, Taunton State Hospital (hospital), with the Commonwealth Employment Relations Board[2] (board) alleging that the hospital[3] committed a prohibited labor practice when it ordered hospital workers to remove their union logo-emblazoned T-shirts. The

---

[1]Leslie A. Kirwan, Secretary of the Executive Office for Administration and Finance, intervener on appeal.

[2]Formerly the Labor Relations Commission.

[3]The Commonwealth owns and operates the hospital through the Department of Mental Health.

board dismissed the charge prior to an evidentiary hearing, finding that, because special circumstances existed, there was not probable cause to believe the hospital had violated G. L. c. 150E, § 10(*a*)(1). The union now appeals. See G. L. c. 150E, § 11. We vacate the order of dismissal and remand for an evidentiary hearing.

*Background.* We summarize the facts set forth in the order of dismissal. The union is the exclusive bargaining representative for Commonwealth employees in Statewide bargaining unit 7, including registered nurses and other health care employees working at the hospital. The hospital is a secure lock-up and psychiatric facility housing severely mentally ill and forensic psychiatric patients; it also provides care to wards of the State and youths with mental health issues who have histories of violent behavior. The hospital has in the past, and continues to have numerous unexpected incidents of patient violence directed at hospital employees. As part of their duties each day, the hospital nurses are in close physical contact with the patients. Patients who have certain privileges are permitted to access all non-maintenance areas of the hospital during the day. Thus, nurses and patients may come into contact with each other throughout the facility: in the hallways, the cafeteria, the cantina, and the hospital courtyard. Patients also have access to daily newspapers, magazines, and all the programs available on cable television.

The nurses are not required to wear a uniform, but the dress code states that "[p]rovocative dress, such as clothing that displays images that could be upsetting, must be avoided."

The hospital staff have worn costumes on Halloween in the past, and the hospital has held Halloween parties for the patients, which the patients have attended in costume attire.

On Friday, October 29, 2004, about forty bargaining-unit members and union supporters wore black T-shirts depicting a skeleton and the phrase "Skeleton Crew" on the front, and, on the back, a "thumbs down" skeleton hand with the phrase "MNA Unit 7 Staffing Levels Cut To The Bone." Upon learning that the nurses were wearing the described T-shirts, Brian Devin, the director of labor relations at the hospital, informed Ronald Dailey, acting director for the Department of Mental Health, that

the T-shirts were inappropriate to wear at the hospital. Dailey agreed and ordered the nurses to remove the T-shirts within one hour. The union members complied.

The union thereafter filed a charge of unfair labor practice, and the hospital filed a response. Pursuant to the then-existing Labor Relations Commission's regulations, the union filed a written submission in support of its charge, and the hospital responded with its written submission. The union then filed its written reply.

Both the union and the hospital submitted affidavits with their written submissions. The union submitted affidavits from a forensic psychologist, Charles Moore, and a nurse, Karen Coughlin, who agreed that the T-shirts were no more provocative than many other visual displays in the hospital. Specifically, Coughlin noted that patients at the hospital read daily newspapers, including articles about staffing issues, have magazines of their choosing, and "watch what they want" on full-access cable television. The nurses and patients have also traditionally celebrated Halloween by having parties and dressing in costumes. Coughlin further suggested that the hospital's decision was motivated not by any concern about patient or staff safety, but because a high-ranking executive happened to be at the hospital on the day in question and the managers did not want her to be confronted by union activity. Moore stated that, in context, "the [union] t-shirt was consistent with other images and Halloween garb to which the patients . . . are exposed . . . and was not 'contraindicated' for those patients at that particular time of the year."

In response to the union charge, Devin, on behalf of the hospital, explained in his affidavit that his decision was based on a consultation with management in the Southeast area[4] who told him that "patients would react in an unruly and unpredictable manner, harming themselves or Hospital staff upon viewing the image of the skeleton and upon reading a statement on clothing worn by their nurses indicating that the Hospital was unable to adequately care for their medical needs." The hospital

---

[4]Devin's affidavit does not name or list the specific positions of the management personnel with whom he spoke, nor does the record include affidavits from those individuals.

also submitted an affidavit from Dr. Marie King, the director of clinical services at the hospital, who stated that "a symbol of skull and crossbones is clearly clinically contraindicated" for the patient population that is susceptible to "hallucinations, delusions, perceptual distortions, paranoid ideations, acute suicidality, and/or trauma."[5]

After review of the written submissions of the parties, the board, without conducting an evidentiary hearing, acknowledged that wearing union insignia is a right protected by G. L. c. 150E, § 2. It nevertheless concluded that the hospital had presented substantial evidence that special circumstances existed that justified the hospital's order prohibiting wearing the T-shirts. Specifically, the board noted that the hospital is a secure psychiatric facility, that patients would react in an unruly and unpredictable manner, harming themselves or hospital staff after viewing the T-shirts, and that, "[g]iven these facts, the Law does not require the Commonwealth's agents to obtain and to weigh competing expert opinions before acting on that information to prevent a potential crisis." The union moved for reconsideration, and the board affirmed the dismissal.

*Discussion.* On appeal, the union argues that the information relied upon by the board in justifying the removal of the T-shirts was speculative, particularly given the differing opinions contained in the record. For that reason, the union maintains that the board's decision was unsupported by substantial evidence, and that the matter should be remanded for an evidentiary hearing.

A prehearing dismissal is a "final order" reviewable under G. L. c. 150E, § 11. *Alexander* v. *Labor Relations Commn.,* 404 Mass. 1005, 1005, cert. denied, 493 U.S. 955 (1989). See *Felton* v. *Labor Relations Commn.,* 33 Mass. App. Ct. 926 (1992). Judicial review under c. 150E, § 11, is governed by G. L. c. 30A, § 14, to the extent that it is applicable. The Supreme Judicial Court, however, has not specified the standard of review applicable to prehearing dismissals. *Quincy City Hosp.* v. *Labor Relations Commn.,* 400 Mass. 745, 748-749 (1987) (declining "to establish fixed standards of review for all commission actions").

---

[5]The T-shirt was displayed for viewing by the panel during oral argument. It shows a smiling, dancing skeleton, not a skull and cross bones as described in Dr. King's affidavit.

Cases have applied either an abuse of discretion standard of review[6] or the substantial evidence test. See *Alexander* v. *Labor Relations Commn., supra* at 1005-1006 (abuse of discretion standard); *Plymouth Police Bhd.* v. *Labor Relations Commn.,* 417 Mass. 436, 440-441 (1994) (abuse of discretion standard); *Anderson* v. *Commonwealth Employment Relations Bd.,* 73 Mass. App. Ct. 908, 910 (2009) (substantial evidence). Because the outcome of this case would be the same regardless of the standard applied, we decline to further address the issue. In conducting our review, we nevertheless "give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as the discretionary authority conferred upon it." *Quincy City Hosp.* v. *Labor Relations Commn., supra* at 749, quoting from G. L. c. 30A, § 14.

The board acknowledges that, generally, the wearing of union insignia constitutes lawful, concerted activity protected by G. L. c. 150E, § 10(*a*)(1).[7] Nonetheless, the board dismissed the union's charge on the basis of its conclusion that the hospital presented substantial evidence that special circumstances existed at the hospital that justified the employer's directive to immediately remove the T-shirts. See *Sheriff of Worcester County* v. *Labor Relations Commn.,* 60 Mass. App. Ct. 632, 641 (2004) ("[i]n the absence of special circumstances, an employer's rule prohibiting the wearing of union insignia violates [G. L. c. 150E, §] 10(*a*)(1)"), quoting from *Dighton School Comm.,* 8 M.L.C. 1303, 1305 (1981). In *Dighton,* the Labor Relations Commission, after an evidentiary hearing, noted that special circumstances are determined on a case-by-case basis. *Dighton School Comm., supra.*

The board argues that both the hospital's dress code, which

----

[6]This test has also been characterized as an inquiry whether the charging party has established that the Labor Relation Commission's decision is "invalid." *Quincy City Hosp.* v. *Labor Relations Comm., supra* at 749-750. *Alexander* v. *Labor Relations Commn., supra* at 1006.

[7]General Laws c. 150E, § 10, as inserted by St. 1973, c. 1078, § 2, provides, in relevant part:

> "(a) It shall be a prohibited practice for a public employer or its designated representative to: (1) Interfere, restrain, or coerce any employee in the exercise of any right guaranteed under [G. L. c. 150E] . . . ."

prohibits "[p]rovocative dress, such as clothing that displays images that could be upsetting," and the opinions of Devin and King, support its conclusion that special circumstances justified the employer's action. We conclude that the limited record before us does not support this determination.

This court has observed that " '[s]pecial circumstances' rarely, if ever, are found in the absence of a comprehensive ban on all nonstandard adornments." *Sheriff of Worcester County* v. *Labor Relations Commn., supra* at 643. Here, apart from the skeleton T-shirt ban, the record contains no information about whether and under what conditions the hospital dress code had been enforced in the past. Given that patients at the hospital have access to diverse print media and unrestricted cable television, and that the T-shirts were worn in the context of Halloween festivities, without evidence pertaining to past enforcement, the existence of the dress code by itself fails to demonstrate that special circumstances existed establishing that patient care would have been jeopardized absent the T-shirt ban.

The affidavits of King and Devin are inadequate to demonstrate either that the image or the message would be upsetting to the patients. Devin, who is not a health care professional, stated that his decision was informed by the opinion of unnamed management individuals. The affidavit fails to specify, however, whether those individuals have the credentials to form a medical opinion about the potential response of patients to the T-shirt. Dr. King refers in her affidavit to a "skull and crossbones" image, indicating that she likely formed an opinion without actually viewing the T-shirt and its image. See note 5, *supra.* Although Dr. King is a clinical psychologist who has "direct daily contact with the patients," without having examined the T-shirt, her opinion lacks weight. Given those uncertainties, the affidavits form an inadequate basis for the board's prehearing dismissal.[8]

---

[8]The board based its dismissal upon the content of the message and the image on the T-shirt. At oral argument, however, counsel for the Secretary appeared to acknowledge that there was little support in the record for the board's position as to the image when he stated that the skeleton image on the T-shirt was no longer the focus of the Secretary's argument. Counsel for the board, however, continued to argue that both the image and the content of the message jeopardized patient care.

The order dismissing the union's charge is vacated, and the matter is remanded to the board for an evidentiary hearing.

*So ordered.*